ELLIS, Judge:
In May, 1975, the State of Louisiana, acting through the Division of Administration, requested bids for a third party lease of certain data processing equipment. The State furnished a lease form containing general provisions satisfactory to the State, and specified, inter alia, that payments under the lease were to be due semi-annually, on October 1st and April 1st, in equal amounts over an eight year period. The lease form contained a provision that, at the termination of the lease, the equipment *1184 leased would be returned to the lessor. The equipment, most of which was apparently already in the possession of the State, was to be purchased from Honeywell Information Systems, Inc., by the eventual lessor, for a price of $6,607,094.00.
Among the bidders were Public Systems, Incorporated (PSI), and First Municipal Leasing Corporation (FMLC). The first bid submitted by FMLC was based upon a higher purchase price than that utilized by the other bidders, and included a provision that the equipment would become the property of the State when the last lease payment was made. The purpose of the latter provision, plus certain other minor changes, was to make the return on the investment tax free to the ultimate investors.
PSI proved to be the low bidder, but, because FMLC’s bid was based on the wrong purchase price, it was given an opportunity to resubmit its bid. When the second FMLC bid proved to be low, PSI was given an opportunity to resubmit its bid on the same basis as did FMLC, with the proceeds being tax exempt. The second PSI bid was for eight payments at $565,000.00, $2,000.00 per payment lower than the bid submitted by FMLC, and the contract was awarded to PSI.
Shortly thereafter, FMLC got in touch with PSI and offered its services in funding the contract. An agreement was reached under which PSI assigned the payments under the lease to FMLC, which in turn irrevocably designated The First National Bank of Denver as escrow agent to receive the payment. Smith, Barney and Co., Incorporated, which furnished the purchase money, was designated as the owner, entitled to receive the lease payments from the escrow agent. Smith, Barney, in turn, sold participation in the lease payments to Allstate Insurance Company, and others, who became the ultimate investors.
The lease was finally executed and the funds disbursed on August 6, 1975. Payments were made by the State, in accordance with the schedule provided in the lease, for three years. Thereafter, the difficulties arose which led to the filing of these suits.
After first questioning the manner in which the payments were credited to principal and interest, the State made an attempt to pay off the contract in full by tendering a warrant for $4,527,618.19 to the escrow agent. This sum was stated to be the total of $4,382,433.00, the alleged principal balance due, plus $145,189.19 in interest computed at 7.9033%.
All interested parties, including the escrow agent, FMLC, Smith, Barney, and the investors, objected, claiming that prepayment of the lease could be made only in accordance with the termination schedule contained in the lease.
The escrow agent did not negotiate the warrant, which was tendered as payment in full of the lease on August 28, 1978. On September 15, 1978, the Attorney General of Louisiana wrote a letter to North Shore National Bank, one of the investors, in which he said:
“Regardless of how the dispute between the State and First Municipal Leasing Corporation is ultimately resolved by the Courts, this office is of the opinion that the assignees of First Municipal should be informed that the indebtedness is no longer earning interest after August 31, 1978.
“Any deficiencies will ultimately have to be paid by First Municipal Leasing Corporation or the Division of Administration of the State of Louisiana. In the opinion of my staff, the payment instructions are clear that you can demand your money.”
On November 22, 1978, the escrow agent was instructed by its principals to cash the warrant, with full reservation of rights to assert their claims to a deficiency. These suits followed.
The major issues presented in the trial court were: (1) whether FMLC had a right to bring suit to enforce the agreement; (2) whether an accord and satisfaction resulted when the warrant was negotiated by the escrow agent; (3) whether the warrant for $4,527,618.19 constituted a pre-payment; *1185 and (4) whether the termination provisions of the lease agreement were contra bonos mores, and unenforceable.
The trial judge ruled in favor of plaintiffs on all points, and enforced the termination schedule, giving plaintiffs judgment for $1,287,615.51, subject to the right of the State to return the equipment and receive a credit for its subsequent sale or lease. From that judgment, the State has appealed. Plaintiffs have answered the appeal, asking that the amount of the award be increased.
A major issue is the characterization of the lease agreement. The State takes the position that it is in fact a sale, that it can only be enforced as such, and that the State cannot be required to pay more than the purchase price plus accrued interest.
The history of the confection of the agreement shows that it was written as a lease because the State so specified in its request for bids. The original request did not provide for title to revert to the State at the end of the lease. This provision was included at the suggestion of FMLC, because it provided certain tax advantages to the ultimate investors, and because it resulted in lower cost to the State and ultimate ownership of the equipment. The Attorney General of the State of Louisiana issued an opinion to the effect that the lease was a binding obligation of the State, and enforceable according to its terms. This opinion was, of course, relied on by the ultimate investors.
We find that the State is precluded from advancing these arguments because of the opinion rendered by the Attorney General that the lease transaction was a valid obligation of the State and enforceable according to its terms. It is entirely clear from the record that the financing was forthcoming from Smith, Barney and the ultimate investors because of reliance on that opinion. Having made such a representation, we find that the State cannot now repudiate it and attempt to treat the transaction as something else. We hold that the contract is enforceable according to its terms. This finding also disposes of the contention that the termination provisions of the contract are contra bonos mores. In any event, the record reveals that these provisions are standard in contracts of this nature.
The State further contends that there was an accord and satisfaction when the warrant tendered by the State to the escrow agent was negotiated. Accord and satisfaction is an affirmative defense which has been jurisprudentially incorporated into our law from the common law. There are three elements to an accord and satisfaction: (1) an unliquidated or disputed claim, (2) a tender by the debtor, and (3) an acceptance by the creditor. Amite Cty. Coop. v. Heck, 393 So.2d 341 (La.App. 1st Cir.1980). The creditors must understand that, if the payment is accepted, the claim will be deemed to have been paid in full. Antoine v. Elder Realty Company, 255 So.2d 625 (La.App. 3rd Cir.1971). There can be no doubt that the first two elements were satisfied. The State disputed the amount due and tendered a sum in full satisfaction of the debt. However, it is equally clear that the letter of the Attorney General of September 15, 1978, was susceptible of being interpreted as recognizing that the warrant could be negotiated without prejudice to the rights of the ultimate investors. Considering that circumstance, and the fact that the warrant was negotiated with full reservation of rights to proceed for the additional amounts alleged to be due, we find that the third requirement for accord and satisfaction has not been met, and that no accord and satisfaction resulted from the negotiation of the warrant.
The State further argues that FMLC has no real interest in this suit and therefore has no right of action. This argument is based on the factual contention that, after acquiring the right to receive the lease payments from PSI, FMLC in turn assigned these rights to Smith, Barney. This contention has already been disposed of by this court in First Municipal Leasing Corp. v. State, 394 So.2d 282 (La.App. 1st Cir.1979), writ denied 395 So.2d 810 (La.1980), in which the State’s contention was denied. It *1186 is contended that additional facts brought out during the trial now mandate a different result. However, the alleged new facts do not alter the essential finding of the court that “it does not appear that plaintiff sold or assigned its right to receive the lease payments or its right to share equally with Public Systems other monies that might be derived from disposition of the computer equipment following termination of the lease by defendant.” 394 So.2d at 284.
All parties argue that the trial court erred in its computation of the amount due plaintiffs under the termination provisions of the contract. As pointed out above, the termination provisions of the contract are the proper measure of the amount due plaintiffs. Basically, the lease provides that it shall terminate automatically unless extended each year for an additional one-year term. During the initial term of the lease, or any renewal thereof, the State has the right to terminate the lease at any time by giving 90 days’ notice of its intention. In that case, the lease provides that the State “may terminate the lease... by paying the Termination Value applicable as of the Termination Date.... ”
In this case, even though the computation of the payments due under the lease was then in question, the State timely notified the escrow agent of its intention to extend the lease for the term from July 1, 1978, through June 30,1979. Under the payment schedule, the next payment was due on October 1, 1978.
The termination notice would necessarily not be effective until November 30, 1978, so that a portion of the amount tendered therewith, $565,000.00, should have been applied to the regular lease payment due on October 1,1978, leaving a balance of $3,962,618.19 to be applied to the termination payment. According to Schedule C, which is attached to the lease, the applicable termination percentage “is indicated to the right of the rental payment next due” as of the termination date. The rental payment next due is that of April 1, 1979, and the termination percentage shown is 76%. Applying that percentage to the original price of the equipment of $6,607,094.00 gives a termination payment of $5,021,-391.44. Subtracting $3,962,618.19 from that amount leaves a balance due by the State of $1,058,773.25. This amount must be paid to the escrow agent in full despite the fact that not all of the ultimate investors are parties to this suit.
The State further objects to the award of legal interest from judicial demand on the award made below, because there is no provision for such in the contract. We find the award of interest to be entirely proper. Article 1921, Code of Civil Procedure; Article 2924, Civil Code.
FMLC and the ultimate investors have requested attorney’s fees as provided for in Section 20 of the lease. Such fees may be due under the lease in the event of a default by the State. However, we find no default in this case. Although the State may not have given the notice required for termination of the lease, and although there may have been a difference of opinion as to the manner in which the lease could be terminated, these procedural shortcomings do not constitute a default within the terms of the lease.
The judgment appealed from is therefore amended so as to reduce the amount thereof to $1,058,773.25 with legal interest from date of judicial demand until paid, and as amended, it is affirmed. Costs in the amounts of $1,721.63 in Suit No. 15,018 and $778.63 in Suit No. 15,019 are assessed against the State.
AMENDED AND AFFIRMED.