429 So.2d 855 (1983)
RTL CORPORATION
v.
MANUFACTURER'S ENTERPRISES, INC.
No. 82-C-1624.
Supreme Court of Louisiana.
April 4, 1983.
Nathan T. Gisclair, Jr., Montgomery, Barnett, Brown & Read, New Orleans, for applicant.
F. Barry Marionneaux, Plaquemine, for respondent.
*856 DENNIS, Justice.
This suit arose from a dispute between the parties to an equipment lease agreement concerning whether a payment by the lessee constituted full payment or only a partial payment of the obligation. After a trial, the trial court dismissed the suit without reasons; the court of appeal affirmed this judgment on the grounds that the lessor's deposit of a check tendered in full payment by the lessee constituted an accord and satisfaction, thus extinguishing the lessee's obligation. We granted writs to evaluate this result under the civilian concepts of our law. We reverse.
On July 9, 1979, Ben Cook, manager of Manufacturer's Enterprises, arranged by telephone for the lease of two large cranes, labor and accessory equipment from the RTL Corporation on an emergency basis. The oral agreement reached over the telephone between Cook and Terrell Carmouche, President of RTL, fixed the hourly rental rate for the cranes and the minimum daily usage for the cranes. However, other details of the calculation of rent were not fixed. Later that afternoon, the cranes, accessory equipment and personnel arrived at defendant's plant. RTL's workers began assembly of the cranes and work on the job on an around-the-clock basis. At the change of each 12-hour shift, an RTL employee prepared a manpower and equipment report and obtained the signature of one of defendant's supervisors for verification. No dispute arose during performance of the job.
At the conclusion of the job, RTL sent an invoice to Manufacturer's Enterprises for $143,016.93. In a letter to RTL dated August 21, 1979, Ben Cook challenged several items on the invoice and the method of calculation of the charges related to transportation and assembly of the cranes. RTL proposed that Manufacturer's Enterprises pay the undisputed amount and leave the disputed charges for subsequent negotiation. On September 11, 1979, RTL received a check from Manufacturer's Enterprises for $107,023.68, with a notation "Payment in full for crane rentals" on the check stub. Terrell Carmouche and his brother, Ronald, treasurer of RTL, then contacted Ben Cook by telephone to insist that the check be considered only a partial payment of the amount owed. Both brothers testified that Cook assented to their treatment of the check as partial payment and to again meet with them to discuss the remainder. On his part, Ben Cook agreed that Carmouche insisted that the check be considered partial payment, but Cook testified that he silently let the demand pass without rejecting or acceding to it.
After this conversation, Ronald Carmouche substituted the words "partial payment" for "payment in full" on the notation on the check stub, and deposited the check. In the following three months, the parties corresponded through their attorneys concerning the disputed remainder of the invoice amount. Following the unsuccessful meeting between officials of both companies in December, 1979, plaintiff filed suit for the unpaid balance of $35,993.25. Defendant answered and pleaded the defense of accord and satisfaction. Trial was held and the trial judge dismissed the suit without assigning reasons. The court of appeal affirmed, reasoning that an accord and satisfaction had extinguished the entire debt, notwithstanding RTL's deletion of the "payment in full" notation. 415 So.2d 412.
The sole issue before us is whether the deposit by RTL of a check tendered to it in full payment of a pre-existing obligation operated to extinguish the entire debt. The debtor maintains that its offer to compromise the disputed debt at the amount of the full-payment check was accepted by RTL when it deposited this check, notwithstanding RTL's protests to the contrary. RTL counters that Manufacturer's Enterprises' offer of the full-payment check in settlement was voluntarily withdrawn by its manager, Ben Cook, in his telephone conversation with the Carmouches. RTL insists that it only deposited the check after Cook assented to regard the check as a partial payment toward the existing debt.
A contract is the law between the parties and it cannot be revoked, unless by *857 mutual consent of the parties, or for causes acknowledged by law. La.Civ.Code art. 1901. Implicit in this precept is the proposition that when a dispute arises between the parties to a contract as to its provisions, they may by further mutual consent freely modify their contract. Furthermore, article 3071 of the Civil Code specifically provides that persons may enter a contract of transaction or compromise to adjust their differences by mutual consent for the purpose of preventing or putting an end to a lawsuit.
These precepts are called into play when a debtor tenders a check as payment in full of an obligation due under contract to his creditor, the amount of which has been disputed by the parties. This offer by the debtor confers on the creditor a specific right to consent to full satisfaction of the debt by accepting the check or to retain his rights under the prior agreement by rejecting the check. Without the debtor's express or tacit consent, the creditor cannot make use of the check and then renounce the condition upon which the debtor made the offer. Fuss v. Cordeleria de San Juan, S.A., 224 La. 338, 69 So.2d 365 (1953); Henriques v. Vaccaro, 220 La. 216, 56 So.2d 236 (1951); Berger v. Quintero, 170 La. 37, 127 So. 356 (1930); Eppling v. Jon-T Chemicals, Inc., 363 So.2d 1263 (La.App. 4th Cir.1978).
In the present case, the lower courts failed to examine the parties' intent but apparently concluded that, as a matter of law, the creditor's deposit of a full payment check constituted an accord and satisfaction. As we have indicated, however, under our law whether the parties altered their original contract or entered a transaction or compromise depends on whether there was mutual consent. In order to correctly decide the case, therefore, it is necessary to examine the evidence and determine whether the parties arrived at a new agreement or acted under the existing one.
Though Manufacturer's Enterprises made an offer to RTL by tendering a check in full payment of the disputed debt, we find that RTL did not accept this offer. The record reveals that when the RTL officials received the check and noticed the "payment in full" notation, they immediately contacted Ben Cook, defendant's manager. RTL's Terrell and Ronald Carmouche and Ben Cook testified concerning this telephone conversation. Both Carmouches testified that they insisted that the check constitute partial payment, leaving the remainder of the debt for negotiation. They further testified that Ben Cook voiced his agreement to this proposal. Ben Cook acknowledged in testimony that the Carmouches informed him that they considered the check as partial payment, but maintained that he could not recall assenting to this treatment of his company's proposal. Instead, he contended that he remained silent on the subject. We find it unnecessary to resolve this conflict of testimony. Even if Mr. Cook did not expressly agree to the Carmouches' insistence, under these circumstances his silence reasonably implies his assent to their proposal. See La.Civ.Code art. 1817; Cf. 6 A.L. Corbin, Corbin on Contracts, § 1279 (1962). Furthermore, the parties' subsequent negotiations on the remaining areas of dispute indicate that they did not consider this check as the final resolution of their differences. See La.Civ. Code art. 1956. Altogether, the evidence is clear and convincing that defendant withdrew its condition of compromise when Ben Cook allowed the Carmouches to consider the tendered check as partial payment of the debt owed by defendant.
Defendant argues that Ben Cook, its business manager, had no authority to modify a written offer to compromise signed by the company's president. We find no merit to this argument. Mr. Cook had served as RTL's only link to the defendant company from the creation of the lease until the dispute arose over the charges. There is no dispute that Mr. Cook had authority to bind the company initially to the terms of the lease agreement; we likewise find that he had at least apparent authority to act for the company in compromise negotiations.
The failure of the parties to resolve their dispute through a tender of compromise and through negotiations necessitates *858 an examination of the basis of their disagreement. When Ben Cook and Terrell Carmouche entered into their agreement on July 9, 1979, they agreed on the equipment and manpower to be provided by RTL for the job. They agreed that RTL would be compensated for use of the cranes on the jobsite at a specified hourly rate and for a minimum number of hours daily. Though defendant insists that they did not discuss the basis for computing the charges for transportation and assembly of the cranes, we find that the parties at least tacitly agreed to a charge for these services based on the portal-to-portal method. The two bases for calculating these charges in the industry are the fixed-cost method and the portal-to-portal method. Under the fixedcost method, the parties simply agree in advance upon a total cost for transportation and assembly. In contrast, under the portal-to-portal method, the fee consists of the sum of the lessor's hourly charges for labor and equipment actually used to transport and assemble the cranes. Neither party contends that a fixed charge was ever mentioned. To the contrary, Terrell Carmouche testified that a portal-to-portal arrangement was agreed to at the inception of the agreement. Ben Cook does not recall such a stipulation, but testified that he assumed that RTL would use a portal-to-portal calculation anyway. Moreover, the invoices prepared for each work shift by RTL for defendant's approval stated that the portalto-portal method was the basis of the agreement. None of the defendant's representatives questioned this arrangement.
Defendant does question the hourly rates and the accuracy of RTL's records in arriving at the total transportation and assembly charge. Despite at least a tacit agreement on a portal-to-portal method, there is no evidence that the parties ever discussed the hourly rates for labor and accessory equipment involved in the transportation and assembly of the cranes. Neither did the periodic invoices by RTL specify the hourly rates and total hours of the laborers and accessory equipment. Accordingly, since the parties did not agree to a specific rate for the various services, they impliedly agreed to reasonable rates for the labor and equipment actually supplied by RTL for the transportation and assembly of the cranes. La.Civ.Code art. 1816; Cf. Benglis Sash & Door Co. v. Leonards, 387 So.2d 1171 (La.1980). The parties also disagree on some charges for crane mats, some billing times for crane use, and a charge for a maintenance man that never appeared on the job. These matters were placed at issue in the trial court and substantial evidence was introduced regarding them. Where a finding of fact by the trial court is erroneous, and where the record before the court of appeal is complete, the court of appeal should render judgment on the record. Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707 (La.1980); Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
Accordingly, we remand this matter to the court of appeal for a determination of the reasonableness of the disputed charges and enforcement of the contract and for rendition of a proper judgment consistent with this opinion.

DECREE
REVERSED AND REMANDED TO THE COURT OF APPEAL.
BLANCHE, J., dissents and assigns reasons.
WATSON, J., dissents, being of the opinion that acceptance of the check was accord and satisfaction.
BLANCHE, Justice (dissenting).
The plaintiff well knew that the check tendered by defendant was in full payment of a disputed claim. The matter had been the subject of much controversy prior to the issuance thereof. A finding that defendant did not consent to acceptance of the check as partial payment depends upon the evaluation of conflicting testimony. There is no manifest error in the lower court's finding in this regard.
I respectfully dissent.