451 So.2d 557 (1984)
KENNER INDUSTRIES, INC.
v.
SEWELL PLASTICS, INC. and Joe N. Guy Company, Inc.
No. 83-C-2128.
Supreme Court of Louisiana.
May 14, 1984.
Mack E. Barham, John F. Whitney, Constant G. Marquer, III, Barham & Churchill, New Orleans, for plaintiff-applicant.
Steven F. Griffith, Sr., New Orleans, for defendant-respondent.
*558 DIXON, Chief Justice.
Kenner Industries, Inc. brings this suit for payment on a subcontract and for recognition of a subcontractor's lien. Defendant, Joe N. Guy Company, Inc., contracted with defendant, Sewell Plastics, Inc., to build a 100,000 square foot addition onto Sewell's warehouse in Reserve, Louisiana. Guy arranged for Kenner to provide the needed fill for the job site.
In July, 1979 Kenner and Guy agreed that Kenner would "furnish pump sand delivered to the job site and necessary labor and equipment to spread and compact in place to within 95% standard proctor method of testing. Unit Price $4.20 compacted in place."[1] The subcontract was written on Guy's standard contract form and noted an approximate total contract sum of $63,000. It was amended on August 13, 1979 to include stripping an area 295' × 485' for a lump sum additional amount of $4,200.
After the work began, Kenner billed Guy monthly for the cubic yards of sand delivered to the job site. Guy paid the first invoice, less 10% retainage, without objection or inquiry. It did not pay the subsequent invoices.
After all the sand had been delivered and compaction was completed to Guy's satisfaction, Guy announced that it would not pay any additional monies for the sand, contending that the contract was either a lump sum contract, or one calling for payment per compacted cubic yards, measured in place.
Kenner sued to have its subcontractor's lien recognized, and for $99,678.96, the remainder of its charge for the sand, plus 25% attorney's fees, legal interest and costs of court. Guy answered, tendering payment of $3,058.02, and claiming that Kenner, with that tender, had been paid in full.
The trial judge noted that "it is the industry custom in this area to charge by the truckload," but concluded that this contract called for Kenner to be paid "$4.20 per cubic yard for each compacted yard in place." He relied on expert testimony presented at trial to determine the number of compacted yards of sand under the building, and cast the defendants to pay for 18,475.4 cubic yards of compacted sand, less whatever had already been paid by defendant Guy.
The trial judge additionally awarded to Kenner $2,520 ($4.20 per cubic yard for 600 cubic yards of sand, measured as delivered) for sand used to construct a road across a field to the job site, because the defendant had barred Kenner's use of the only ingress and egress to the job site. The court of appeal affirmed, 437 So.2d 1191 (La.App. 1983), finding no error in the trial court's conclusion that the contract was not ambiguous.
"Agreements legally entered into have the effect of laws on those who have formed them." C.C. 1901. Courts are bound to give legal effect to agreements according to the true intent of the contracting parties. C.C.1945. That intent is determined by the words of the contract when they are clear and explicit and lead to no absurd consequences. C.C.1945.
When the intent is not clear, it may be discerned by the manner in which the parties execute their agreement. C.C.1956. If doubt or obscurity exists because one party failed to give an explanation he ought to have given, the construction most favorable to the other party shall be adopted. C.C.1958.
The meaning of the contract language in dispute, "unit price $4.20 compacted in place," is not clear or unambiguous. It does not indicate the unit of measurement to be used, although the parties do not dispute that cubic yards was intended. Nor does it indicate the time and place the cubic yard unit was to be measured whether when and as delivered, as is the industry custom, or after it has been compacted in place, as the defendant contends.
*559 In March, 1979 an employee of Guy called Kenner and obtained a price quotation for 20,000 cubic yards of sand delivered. He later called Kenner back to ask Kenner's total price for delivering, spreading and compacting the sand. He was told $4.20 per yard.
In July, 1979 Kenner and Guy signed an agreement for delivering, spreading and compacting sand at $4.20 per yard. Kenner then entered a subcontract with Scott Jackson to pay him $3.80 per cubic yard, measured by delivered truckloads, for the sand, labor and equipment to complete the fill and compaction.
Jackson began delivering sand in August, 1979. Guy soon determined that approximately one-half of the area to be filled was covered with a muddy topsoil that needed to be removed before the fill was added. On August 13 Guy and Kenner agreed to a change order.
According to the written change order, Kenner was to remove four inches of topsoil from an area 295' × 485', and then to remove the soil from the site. Testimony at trial indicates that the area cleared was 225' × 203' and varied in depth from four to eight inches. The charge for this additional work, $4,200, did not include any amount to pay for sand to replace the soil removed.
When they began delivery, Jackson's trucks entered and left the job site through Sewell's main entrance and parking lot. Because of the congestion this caused, Sewell asked Jackson to use another route from the road, crossing a field. Finding his trucks getting stuck in the soft earth, Jackson asked for and was given oral permission from Guy to create a sand road across the field. Jackson's trucks then entered through the parking lot, and left across the field.
Jackson also dumped sand around the perimeter of the building site to allow machinery working at the site to have a firm surface on which to sit. There was no change in the subcontract for these additional uses of sand.
On August 20 Kenner billed Guy for 15,708 cubic yards of sand, and for the mucking out authorized by the change order. Guy paid the invoice, retaining 10%, even though the invoiced amount was greater than the total price indicated on the contract, and even though Guy knew the job was far from complete. Kenner billed Guy again on September 19, October 22 and November 21, each time billing for the number of cubic yards of sand delivered.
Kenner contends that it expected to be paid for each cubic yard of sand delivered, as is the industry custom. Consistent with that belief, it obligated itself to pay according to delivered cubic yards. It did not object when the mucking out increased the area to be filled, or when sand was delivered outside the perimeter of the building. Kenner expected to be paid for delivered cubic yards, wherever and however the sand was put to use at the site.
The record shows that when payment for sand is to be made per compacted cubic yard, prior to providing a price quotation, the sand hauler will measure the site to determine the volume of the area to be filled. He will then convert that volume into the number of cubic yards of sand he must deliver, since he will pay for the sand by the truckload or by the delivered cubic yard. The difference in volume between sand on the truck and compacted sand could be 50% to 80%.
Kenner did not attempt to learn the measurements of the area to be filled, or attempt to estimate the number of delivered cubic yards which would be necessary to provide a needed number of compacted cubic yards.
Kenner kept a count of the number of yards delivered to the site, and indicated that number on each invoice presented for payment. Although Kenner was not being paid, it continued to pay Jackson weekly, by the truckload, for sand delivered.[2]
*560 Guy contends that it intended to pay per compacted cubic yard. However, Guy did not provide Kenner with plans for the building, or discuss with Kenner the characteristics of the fill site. It did not measure the site before agreeing to pay for the fill, and, until this litigation was brought, it displayed no intent to determine the exact number of compacted yards of sand in the fill area.
The intent of a party as it entered an agreement can be determined by the manner in which it operates under the agreement. C.C.1956; Book v. Schoonmaker, 210 La. 94, 102, 26 So.2d 366, 369 (1946). As Kenner submitted invoices to Guy, Guy collected from Kenner the individual truck trip tickets showing how much sand was delivered to the site. By concerning itself with the individual truck trip tickets, Guy indicated an intent to pay Kenner per delivered cubic yard. It waited until the job was finished to announce that the invoices based on cubic yards delivered would not be honored.
Guy accepted and paid the first invoice submitted, paying for delivered cubic yards. With that first invoice, Guy was put on notice that Kenner expected to be paid per delivered cubic yard. It should have sought clarification then instead of acquiescing in that expectation by making payment. Guy's silence indicated assent to Kenner's interpretation of the contract. RTL Corporation v. Manufacturer's Enterprises, Inc., 429 So.2d 855 (La.1983).
Guy argues that "compacted in place" is repeated in the contract language, coupled with the unit price, to show that "compacted" relates to the unit price. They argue that "unit price $4.20 compacted in place" means "$4.20 per compacted cubic yard measured in place." It could as easily mean that the $4.20 unit was a cubic yard of sand on the truck, which was to be placed and compacted. The latter interpretation is more defensible, given the actions of the parties and the evidence presented at trial.
The customs of the industry may be considered when construing ambiguous contracts. Henry v. The Ballard & Cordell Corp., 418 So.2d 1334, 1340 (La.1982). The trial judge was not incorrect in finding that it is the custom of the industry in this area to charge by the truckload; his result is supported by testimony at trial. Any deviation from industry custom should have been expressly stated in the agreement.
Guy prepared the subcontract and had the opportunity to make clear that payment for the sand would be based on compacted units. "... the ambiguity or contradiction which existed in the language of the contract must be construed against the party who prepared the contract...." Kuhn v. Stan A. Plauche Real Estate Co., 249 La. 85, 93, 185 So.2d 210, 213 (1966).
Kenner has asked that we recognize its lien against Sewell under the Private Works Act, R.S. 9:4801 ff. Guy opposed the lien, arguing that Kenner failed to properly itemize its claim. The lien instruments in the record detail the substance of the contract, the unit price and the total due, and describe each invoice. The affidavit sufficiently identifies the amount and nature of the obligation. Defendant's opposition is without merit.
Kenner has also demanded 25% attorney's fees, claiming that the suit is one on open account. To the contrary, this is a one time construction contract. The parties did not agree to a course of dealings over a period of time, but agreed that Kenner, in accord with a particular contract, would do a particular job. Amending the original contract did not create an open account. Kenner is not entitled to attorney's fees under R.S. 9:2781. See Herb's Machine Shop, Inc. v. The John Mecom Company, 426 So.2d 762 (La.App.1983); O.J. Rivero Towing Company v. Coastal Flex Co., Inc., 414 So.2d 1384 (La.App. 1982).
*561 For the reasons assigned, it is ordered that the judgment appealed from be annulled and set aside, and that there now be judgment in favor of Kenner Industries, Inc. and against Joe N. Guy Company, Inc. and Sewell Plastics, Inc. in the amount of $99,678.96 with legal interest from date of demand, and further that there be judgment recognizing Kenner's lien and privilege against Sewell Plastics, Inc. dated December 7, 1979 and filed in the records of the Clerk of Court for the Parish of St. John the Baptist on December 11, 1979, bearing numbers 70362 and 70363, all at the cost of defendants Joe N. Guy Company, Inc. and Sewell Plastics, Inc.
NOTES
[1] Subcontract between Joe N. Guy Company, Inc. and Kenner Industries, Inc. to furnish work required for construction of an addition to Sewell Plastics, Inc. dated July 12, 1979.
[2] Kenner has paid $133,830.08 to Jackson Services under its subcontract and owes $14,869.12, the 10% retainage, for 38,184 cubic yards of sand. The dollar amounts include $3,240 paid and $360 owed for work done pursuant to a change order not in dispute here.