GUIDRY, J.
| .-¡American Home Assurance Company, also known as American International Group, Inc. Worker’s Compensation (“AIGWC”), appeals a summary judgment of the trial court dismissing its claim for reimbursement against the Evanston Insurance Company (“Evanston”). The underlying facts of this case, which has previously come before this court twice on appeal,[1] are not in dispute and will only be recounted as necessary herein.
In this appeal, AIGWC has asserted several assignments of error that largely center on two main allegations: (1) that the trial court denied it “due process of law and fundamental fairness by setting aside its January 20, 2009 Ruling of the Court without notice and by failing to provide [it] notice that Evanston’s and National Union’s[2] Motions for Summary Judgment would be heard on September 11, 2009”; and (2) that the trial court erred in failing to find that the facts surrounding the high-low agreement executed by Ev-anston and the plaintiffs constituted a “compromise” made in violation of La. R.S. 28:1102(0(1), for which Evanston is liable to AIGWC for reimbursement of the full amount of compensation benefits and medical benefits paid to the plaintiffs.
AIGWC’s first assignment of error is without merit. As acknowledged by AIGWC, following remand of this matter to the trial court, AIGWC, Evanston, and National Union all filed cross motions for summary judgment on the issue of whether the high-low agreement between Ev-anston, National Union, and the plaintiffs constituted a compromise for which the insurers could be held liable under La. R.S. *566 28:1102(0(1). A hearing on the cross motions was held on August |48, 2008, following which the trial court issued a “Ruling of the Court,” signed January 20, 2009, wherein it stated that for the reasons stated in AIGWC’s brief, it granted AIGWC’s motion for summary judgment and denied Evanston’s motion for summary judgment. The “Ruling of the Court” concluded with the instruction “judgment to be submitted accordingly.”
Thereafter, AIGWC filed a motion for entry of final judgment, wherein it contended that it had drafted a proposed judgment in conformity with the trial court’s January 20, 2009 “Ruling of the Court.” Evanston, however, objected to the proposed judgment. On the date the motion for entry of judgment was scheduled to be heard, the trial court held a status conference instead, following which the trial court issued a judgment with reasons signed September 28, 2009. In that judgment, which is the judgment appealed herein, after reciting certain “findings of fact and conclusions of law” intended to “clarify and supersede” its ruling on January 20, 2009, the trial court decreed that it was granting the motions for summary judgment filed by Evanston and National Union on February 27, 2008, and March 27, 2008, respectively. Pursuant to that decree, the trial court dismissed AIGWC’s claims against Evanston and National Union, with prejudice, and denied AIGWC’s motion for entry of final judgment as moot.
A final judgment can be inconsistent with the written reasons for judgment. Written reasons for judgment are considered to be interlocutory rulings and do not carry the finality of a judgment. Prior to final judgment, a trial judge may, at his discretion, change the substance or the result of interlocutory rulings. Thurman v. Thurman, 521 So.2d 579, 581 (La. App. 1st Cir.1988). As previously stated, a hearing on AIGWC’s, Evanston’s, and National Union’s cross motions for summary judgment on the issue of whether the high-low agreement would constitute a compromise under La. R.S. 28:1102(0(1) was held on August 8, 2008; thus, all interested parties were heard on the issue. Although the trial court ^initially indicated that it would render judgment in favor of AIGWC, it still acted within its authority and with due process in rendering the judgment appealed. Hence, we reject this assertion of error.
Accordingly, we must now consider the primary issue in this appeal — whether the trial court erred in not finding that the high-low agreement was a compromise pursuant to La. R.S. 23:1102(0(1). That statute provides:
When a suit has been filed against a third party defendant in which the employer or his insurer has intervened, if the third party defendant or his insurer fails to obtain written approval of the compromise from the employer or his insurer at the time of or prior to such compromise and the employee fails to pay to the employer or his insurer the total amount of compensation benefits and medical benefits out of the funds received as a result of the compromise, the third party defendant or his insurer shall be required to reimburse the employer or his insurer to the extent of the total amount of compensation benefits and medical benefits previously paid to or on behalf of the employee to the extent said amounts have not been previously paid to the employer or his insurer by the employee pursuant to the provisions of Subsection B of this Section. Notwithstanding such payment, all rights of the employer or his insurer to assert the defense provided herein against the employee’s claim for future *567 compensation or medical benefits shall be reserved.
Lorraine A. Ryan, Bill and Susan Wozniak, individually and on behalf of their minor children, and James Ventle, individually and on behalf of his minor children (“plaintiffs”), filed suit against several defendants, including Evanston and National Union, relative to a car accident that occurred in Pointe Coupee Parish on February 27, 1997.[3] Soon after the plaintiffs filed suit in this matter, AIGWC filed a petition for intervention, seeking reimbursement of any workers’ compensation and medical payment benefits it paid to or on behalf of the plaintiffs. Prior to litigating the issues of liability and damages, the parties sought a ruling from the trial court on the issue of coverage under the policies issued by Evanston and National Union. Pending the trial court’s ruling on the coverage issue, Evanston [fiand National Union negotiated a high-low agreement with the plaintiffs that is central to the present appeal.
Evidence of the high-low agreement crafted by Evanston and National Union with the plaintiffs is presented in a series of letters dated October 22, 2001, November 7, 2001, November 12, 2001, and November 26, 2001. Essentially, the terms of the agreement are outlined in the October 22, 2001 letter from Evanston, which provided that in exchange for an immediate payment of $350,000 from Evanston and $200,000 from National Union, the plaintiffs agreed to cap their total recovery at $5,000,000, in the event a jury found the insured liable and awarded damages in excess of that amount. In negotiating the agreement, the right to try the case to a jury on the issues of liability and damages was expressly reserved, as well as a request that “any further litigation of the liability and damage issues [be] postponed until the issue on coverage is resolved” on appellate review. In addition to limiting exposure for damages, Evanston stated in the letter that the “cost savings in discovery is the incentive for payment on the low end.”
Although the October 22, 2001 letter stated that the high-low agreement was conditioned upon National Union’s and AIGWC’s acceptance, the condition that AIGWC accept the terms of the agreement was eliminated pursuant to the November 7, 2001 acceptance letter from National Union. In that letter, National Union acknowledged that a teleconference had been conducted by counsel for the plaintiffs, Ev-anston, and National Union, and pursuant thereto, National Union was confirming in writing its agreement to the terms of the high-low agreement as outlined in Evans-ton’s October 22, 2001 letter; however, National Union also confirmed that the terms of the high-low agreement were to be kept confidential between the plaintiffs, Evanston, and National Union.
Finally, by a letter dated November 12, 2001, the plaintiffs confirmed in writing their acceptance of the high-low agreement, as outlined in Evanston’s |7October 22, 2001 letter and modified by National Union’s November 7, 2001 letter. By a letter dated November 26, 2001, Evanston remitted payment to the plaintiffs in the amount of $350,000.
At the time the parties negotiated the high-low agreement, La. C.C. art. 3071 provided, in pertinent part:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an *568 end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.[4]
AIGWC relies on Lavergne v. Quality Fabricators of Eunice, Inc., 02-0548 (La. App. 3d Cir. 12/11/02), 832 So.2d 1176, writ denied, 03-0127 (La.3/21/03), 840 So.2d 540, for the proposition that a high-low agreement constitutes a compromise under the prior version of La. C.C. art. 3071. We reject the assertion that the holding of that case mandates that all high-low agreements be deemed compromises in accordance with the prior version of La. C.C. art. 3071. It was expressly noted in the Lavergne opinion that in exchange for the high-low agreement, “the parties agreed that there would be no post-trial motions or appeals filed by the parties.” Lavergne, 02-0548 at 2, 832 So.2d at 1178. Consequently, the court found that the agreement put an end to the lawsuit between the injured employee and the third-party tortfeasor. Lavergne, 02-0548 at 3, 832 So.2d at 1179; see also Lavergne v. Quality Fabricators of Eunice, Inc., 04-125, pp. 4-5 (La.App. 3d Cir. 12/8/04), 888 So.2d 1147, 1151, writ denied,, 05-0046 (La.3/18/05), 896 So.2d 1007.
In the matter before us, the plaintiffs, Evanston, and National Union confected the high-low agreement prior to the parties receiving a ruling by the trial | Rcourt on the issue of insurance coverage and prior to any determination of the liability of the insured. Consequently, and unlike the agreement in Lavergne, the subject high-low agreement expressly reserved to Evanston and National Union “the right to try the case to a jury on liability and damages” and further indicated that appellate review would not only be allowed, but would be sought to “resolve” the issue of coverage. Indeed, the June 24, 2002 judgment of the trial court declaring coverage for the plaintiffs’ claims under the Evans-ton and National Union policies was not only appealed to this court by the insurers, but the plaintiffs sought subsequent review of this court’s decision by the Louisiana Supreme Court.
Hence, the high-low agreement in this case did not terminate the litigation between Evanston, National Union, and the plaintiffs. Nor could it be said to restrict or limit any of the issues presented in the lawsuit; rather, the agreement simply provided that in exchange for receiving a guaranteed minimum recovery, the plaintiffs agreed to waive their right to receive any money in excess of the maximum amount allowed. There was no waiver or restriction on the plaintiffs’ right to seek a judicial determination of what amount of compensation, if any, may be owed to them. Instead, the high-low agreement at issue in this case is best characterized as a “sale” of the plaintiffs’ right to take full advantage of a potentially favorable judgment or to fully enforce any rights potentially to be conferred by judgment. In either case, the litigation is maintained, and as such, would not constitute a valid compromise under the law as it existed at the time the high-low agreement was con-fected.[5] See Reinecke v. Pelham, 199 So. *569 521, 523-24 (La.App.Orleans 1941)(holding that an agreement purporting to be a compromise, but not meeting the technical requirements of a compromise, should be regarded as a sale, if made for consideration, and a donation, if made without consideration).
| nNor do we find that the mere negotiation of the check issued by Evans-ton was sufficient to convert the agreement into a compromise for which the provisions of La. R.S. 23:1102(0(1) would attach. For there to be a valid accord and satisfaction of a debt or claim, there must be a disputed claim, a tender of a check for less than the amount of the claim by the debtor, and an acceptance of the tender by the creditor. Essential to a valid accord and satisfaction is that the creditor understands that the payment is tendered in full settlement of the dispute. Harrington v. Aetna Life and Casualty Company, 441 So.2d 1255, 1256 (La.App. 1st Cir.1983); McClelland v. Security Industrial Insurance Company, 426 So.2d 665, 669-70 (La. App. 1st Cir.1982), writ denied, 430 So.2d 94 (La.1983). The check negotiated in this case referenced a claim number, the date of loss, and simply stated “settlement” on the payment stub attached to the check. Notations on the back of the check indicate that the check was deposited on November 28, 2001.
A creditor must fully understand and be aware that if payment is accepted, the claim will be deemed to have been paid in full, and if the written notation is insufficient to put the creditor on notice of the nature of the compromise being offered, there can be no accord and satisfaction. See Cowley Corporation v. Shreveport Packing Company, Inc. of Kansas, 440 So.2d 1345, 1352 (La.App. 2d Cir.1983), writ denied, 444 So.2d 122 (La.1984). In the subject case, the use of the word “settlement” alone does not unequivocally convey that the payment was tendered in full payment of any debt or claim that may be owed. But more importantly, no accord and satisfaction can be premised on the subject negotiated check, because the accompanying letter by which the check was tendered to the plaintiffs plainly stated that the check was being offered “pursuant to the high/low agreement.” As provided in La. C.C. art. 3073, prior to the 2007 amendment:
Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the | mnecessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.
The letter accompanying the check in this case, plus the preceding letters of October 22, 2001, November 7, 2001, and November 12, 2001, all clearly indicate that the check was issued in fulfillment of the high-low agreement and not as full payment of the plaintiffs’ claim.
Also, we note that prior to 2007, while it has been held that an accord and satisfaction is similar to a compromise, it was not, strictly speaking, a compromise. Prior to 2007, accord and satisfaction was solely a jurisprudentially recognized method by which an obligation could be extinguished, whereas the law of compromise has always been established by statute to prevent or put an end to a lawsuit. See Aufrichtig v. Aufrichtig, 34,909, pp. 12-13 (La.App.2d Cir. 8/22/01), 796 So.2d 57, 65; Harrington, 441 So.2d at 1256; McClelland, 426 So.2d at 670 n. 2. See also La. C.C. art. 3079, comment (a).
CONCLUSION
Having carefully considered the applicable facts and law governing this matter, we *570 find that the high-low agreement confected by Evanston, National Union, and the plaintiffs did not constitute a compromise under the applicable version of La. C.C. art. 3071. Thus, neither the agreement, nor the cashing of the check issued pursuant thereto, can be construed as being confected in violation of La. R.S. 28:1102(0(1). Therefore, finding the judgment of the trial court to be correct under the applicable law, we affirm. All costs of this appeal are assessed to the appellant, American Home Assurance Company, also known as AIG Worker’s Compensation.
AFFIRMED.
HUGHES, J., concurs.

. See Ryan v. State Farm Mutual Automobile Insurance Company, 02-2303 (La.App. 1st Cir. 6/27/03), 848 So.2d 165 (unpublished opinion), writ denied, 03-2132 (La. 11/7/03), 857 So.2d 503, and Ryan v. State Farm Mutual Automobile Insurance Company, 05-0268 (La.App. 1st Cir. 02/10/06), 924 So.2d 514 (unpublished opinion).

. National Union Fire Insurance Company of Pittsburgh, Pennsylvania (“National Union”), also referred to as "AIG,” "AIG Business Auto” and "AIG Primary” in the record, filed a separate motion for summary judgment on the same grounds asserted by Evanston.

. A separate suit regarding the February 27, 1997 accident, filed by Gus Hernandez, was consolidated with the plaintiffs’ suit. A separate high-low agreement was offered to Hernandez, but is not at issue in this appeal.

. By 2007 La. Acts, No. 138, § 1, Articles 3071 through 3083 of the Louisiana Civil Code, under the title "Of Transaction or Compromise,” were amended and re-enacted. Following amendment and re-enactment in 2007, La. C.C. art. 3071 now provides "[a] compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship.”

. While we are troubled by this conclusion, we observe that under the current version of La. C.C. art. 3071, such a result would now be precluded.