WHIPPLE, C.J.
| gThis matter is before us on appeal by plaintiff, Complete Medical Solutions, L.L.C., from a judgment of the trial court granting summary judgment in favor of the defendant, Health Net Federal Services, L.L.C., and dismissing plaintiffs claims with prejudice.
For the reasons that follow, we affirm
FACTS AND PROCEDURAL HISTORY
This appeal arises from a judgment rendered in connection with an invoice bear *809 ing # 5762 and dated March 28, 2011, which was issued by Complete Medical Solutions, L.L.C. (“CMS”) to Health Net Federal Services, L.L.C. (“Health Net”), and demanded payment for certain fees associated with 19 units of software and an annual maintenance fee for VISN 16, totaling $1,516,965,50. CMS is a software development company that, along with several of its development partners, was in the process of developing a software package designed to provide the Veterans Administration (“VA”), with a fee basis claims system. Health Net is a company that held several contracts with the VA to provide repricing services.[1]
On April 12, 2011, Health Net Executive Counsel, David R. Feniger, sent a letter to Robin Hart, CMS’s Executive Administrator, acknowledging that Health Net was in receipt of invoice # 5762 and advising that Health Net would pay the annual maintenance fee for the VISN 16 software in the amount of $20,639.50 that Health Net had agreed to purchase, but noting that Health Net never agreed to compensate CMS for any other goods or services set forth in the invoice, including the additional 19 units of software, Mr. Feniger further set forth the reasons why Health Net never agreed to purchase the additional 19 units of | ..¡software, and concluded that “other than a payment in the amount of $20,689.50, Health Net will not compensate CMS for the remainder of the invoice.”
On May 11, 2011, approximately one month later, after receiving no response from CMS, Health Net sent CMS a check in the amount of $20,639.50 accompanied by a cover letter from Mr. Feniger, which stated that the enclosed check represented “payment in full for charges referenced in your company’s invoice no. 5762.” Importantly, the check also contained the notation “PAYMENT IN FULL.” CMS subsequently endorsed and deposited the check.[2]
On July 24, 2012, CMS filed the instant suit against Health Net, contending that in reliance upon Health Net’s representation that it would pay CMS for the development of repricing software, in addition to VISN 16, CMS had included the repricing software as an additional feature in its fee basis claims system to be provided to the VA. Thus, CMS sought judgment against Health Net for the attendant costs incurred for providing these goods and services, ie., the remaining unpaid costs shown on invoice # 5762. Health Net answered the petition, asserting various affirmative defenses, including the doctrine of accord and satisfaction, which it contends precludes recovery for the claims lodged by CMS herein.
On October 9, 2012, Health Net filed a motion for summary judgment, contending that CMS’s claims against Health Net were barred by the doctrine of accord and satisfaction, and thereby seeking dismissal of all claims asserted by CMS in its petition. The motion was heard before the trial court on January 7, 2013. At the conclusion of the hearing, the trial court granted Health Net’s motion for summary judgment and dismissed CMS’s claims with prejudice. A judgment was signed on January 11, 2013.
|4CMS now appeals, contending that the trial court erred in: (1) finding that Health *810 Net met its burden of proving all of the essential elements of the accord and satisfaction doctrine; and (2) applying the doctrine of accord and satisfaction to dismiss CMS’s claims against Health Net on a motion for summary judgment.
DISCUSSION
Summary Judgment
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. All Crane Rental of Georgia, Inc. v. Vincent, 2010-0116 (La. App. 1st Cir.9/10/10), 47 So.3d 1024, 1027, writ denied, 2010-2227 (La.11/19/10), 49 So.3d 387. A motion for summary judgment should only be granted if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the movant is entitled to summary judgment as a matter of law. LSA-C.C.P. art. 966(B)(2).
The burden of proof on a motion for summary judgment remains with the mov-ant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2). Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual | ¿dispute mandates the granting of the motion. LSA-C.C.P. art. 967(B); Pugh v. St. Tammany Parish School Board, 2007-1856 (La.App. 1st Cir.8/21/08), 994 So.2d 95, 97 (on rehearing), writ denied, 2008-2316 (La.11/21/08), 996 So.2d 1113. When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading. Instead, his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. LSA-C.C.P. art. 967(B).
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Sanders v. Ashland Oil, Inc., 96-1751 (La.App. 1st Cir.6/20/97), 696 So.2d 1031, 1035, unit denied, 97-1911 (La.10/31/97), 703 So.2d 29. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Christakis v. Clipper Construction, L.L.C., 2012-1638 (La.App. 1st Cir.4/26/13), 117 So.3d 168, 170.
Accord and Satisfaction
The doctrine of accord and satisfaction estops a creditor from suing on a compromised debt. River Bend Capital, L.L.C. v. Lloyd’s of London, 2010-1317 (La.App. 4th Cir.4/13/11), 63 So.3d 1092, 1094, writ denied, 2011-0986 (La.6/24/11), 64 So.3d 219. For there to be a valid accord and satisfaction of a debt or claim, there must be: (1) a disputed claim; (2) a *811 tender of a check for less than the amount of the claim by the debtor, and (3) an acceptance of the tender by the creditor. Harrington v. Aetna Life and Casualty Company, 441 So.2d 1255, 1256 (La.App. 1st Cir.1983); McClelland v. Security Industrial | ^Insurance Company, 426 So.2d 665, 669-670 (La.App. 1st Cir.1982), writ denied, 430 So.2d 94 (La.1983).
Essential to finding that a valid accord and satisfaction occurred is a showing that the creditor understood that the payment was tendered in full settlement of the dispute. Ryan v. State Farm Mutual Automobile Insurance Company, 2010-0961, 2010-0962 (La.App. 1st Cir.12/22/10), 68 So.3d 563, 569, writ denied, 2011-0172 (La.4/1/11), 60 So.3d 1250. Thus, an accord and satisfaction is not present if there is no evidence that the creditor was fully informed of the nature of the compromise offer by the debtor. Harrington v. Aetna Life and Casualty Company, 441 So.2d at 1256. However, the unilateral action by a creditor in altering an endorsement from “payment in full” to “partial payment” and negotiating the altered instrument will not change the legal import of its acceptance by the creditor as an acknowledgement of payment in full satisfaction of the obligation. Harrington v. Aetna Life and Casualty Company, 441 So.2d at 1257. Accord and satisfaction is an affirmative defense and must be specially pled in the answer. See LSA-C.C.P. art. 1005; First Municipal Leasing Corp. v. State, 422 So.2d 1182, 1185 (La.App. 1st Cir.1982), writs denied, 427 So.2d 867, 1197 (La.1983).
The doctrine of accord and satisfaction was codified by La. Acts 2007, No. 138, § 1, with the creation of LSA-C.C. art. 3079, which provides:
A compromise is also made when the claimant of a disputed or unliquidated claim, regardless of the extent of his claim, accepts a payment that the other party tenders with the clearly expressed written condition that acceptance of the payment will extinguish the obligation.
This article was not intended to change the law, but to simply give recognition to the validation by the Louisiana jurisprudence of the dispute-settling mechanism known at common law as accord and satisfaction. LSA-C.C. art. 3079, comment (a).
|7Assignment of Error Number One
In its first assignment of error, CMS contends that the trial court erred in finding that Health Net met its burden of proving all of the essential elements necessary to obtain dismissal of plaintiff’s claims based on the doctrine of accord and satisfaction.
In support of its motion for summary judgment, Health Net presented the following exhibits: (1) Health Net’s first requests for admission propounded to CMS; (2) CMS’s quote dated September 29, 2006; (3) CMS’s invoice # 5762 dated March 23, 2011; (4) Health Net’s April 12, 2011 letter to CMS; (5) Health Net’s May 11, 2011 cover letter to CMS and check in the amount of $20,639.50; (6) a copy of Health Net’s check in the amount of $20,639.50 to CMS after it had been endorsed and deposited; (7) CMS’s responses to Health Net’s first requests for admission; and (8) the affidavit of David R, Feniger, Executive Counsel to Health Net.
To prove it was entitled to judgment as a matter of law, Health Net relied on CMS’s invoice # 5762, which included the following charges:
(1) “EDI Interface Fee” for 19 units of software in the amount of $1,424,050.00 ($74,950.00 each);
(2) “PGP Encription Software License Fee” for 19 units of software in the amount of $72,276,00 ($3,804.00 each); and
*812 (3) “Repricing EDI Interface — Annual Maintenance Fee VISN 16” in the amount of $20,639.50.
Health Net further relied on its April 12, 2011 letter to CMS, responding to invoice # 5762 and disputing the charges set forth therein, as follows:
[Health Net] is in receipt of your company’s invoice no. 5762 in the amount of $1,516,965.50. Except for the Repricing EDI Interface — Annual Maintenance Fee for VISN 16 in the amount of $20,639.50, which Health Net agreed to pay pursuant to the Purchase Order dated October 27, 2006, we never agreed (formally |sor informally) to compensate [CMS] for any other goods or services, including the items set forth in this invoice. The Purchase Order referenced above incorporated the CMS quote dated September 29, 2006, which exclusively relates to VISN 16 software and interface fees. As is clear from a review of the Purchase Order and the CMS quote, Health Net never agreed to purchase any software or licensing fees other than for VISN 16. Nor would Health Net have agreed to such compensation because (1) the work performed by CMS was made to [VA] hardware located on [VA] property; and (2) the [VA] repeatedly communicated to Health Net that such work was the responsibility of the EDI contractor (to whom CMS was the subcontractor), not Health Net.
Accordingly, other than a payment in the amount of $20,639.50, Health Net will not compensate CMS for the remainder of the invoice. [Emphasis added.]
Health Net further relied on the May 11, 2011 cover letter attached to its check, wherein Health Net stated:
Attached hereto please find a check in the amount of $20,639.50, representing payment in full for charges referenced in your company’s, invoice no. 5762. [Emphasis added.]
Should you have any questions, please feel free to contact me.
As additional support, Health Net relied on a copy of its check tendered for less than the amount of the claim, with the notation “PAYMENT IN FULL” on its face, as well as a copy of the check after it had been negotiated and deposited by CMS.
Based on the documents and the record as a whole, on review, we agree with the trial court that Health Net established that the necessary elements for dismissal of the suit under the doctrine of accord and satisfaction. Health Net’s April 12, 2011 letter to CMS clearly sets forth that it was disputing the charges set forth in invoice #5762. Thus, Health Net tendered a check for significantly less than the amount of the total charges itemized in the invoice. Moreover, the tendered partial payment by Health Net undisputedly was accepted and deposited by CMS.
|9We note that CMS countered Health Net’s motion for summary judgment, offering the following exhibits in support; (1) the affidavit of Steven R. Arter, a managing member of CMS; (2) Health Net purchase order dated October 25, 2006 and terms and conditions; (3) CMS’s invoice # 5726 dated November 25, 2009; (4) CMS’s April 6, 2011 fax to Health Net of invoice # 5762 dated March 23, 2011 and quote dated September 29, 2006; (5) CMS’s invoice # 5769 dated March 1, 2012; (6) the affidavit of Ferdinand J. Jefferson, CMS member; (7) CMS’s invoice # 5762 dated March 23, 2011 containing the notation “partial payment”; and (8) the affidavit of Robin Hart, Executive Administrator of CMS.
However, we find no merit to CMS’s contention that Health Net failed to satisfy *813 its burden of proving that it was entitled to judgment as a matter of law and that material issues of fact remain as to whether CMS understood that the check tendered by Health Net was in full and final satisfaction of the entire invoiced amount or was payment in full for the VISN 16 annual maintenance fee. Specifically, CMS contends that the check tendered by Health Net was ambiguous, arguing that it is just as plausible that the “PAYMENT IN FULL” reference on the check could have meant payment in full for the VISN 16 annual maintenance fee. rather than payment in full for the entire invoice.[3] We disagree.
Although the creditor must understand the restrictive endorsement if he is to be bound by the doctrine of accord and satisfaction, this does not mean the | increditor’s statement, “I did not understand,” would be sufficient to destroy the efficacy of the endorsement. Rather, the test is whether the language is sufficiently clear to apprise the negotiator of the maker’s intent to tender the amount in full settlement. Eppling v. Jon-T Chemicals, Inc., 363 So.2d 1263, 1265 (La.App. 4th Cir.1978).
In Eppling, the court determined that the payee’s action in scratching out the restrictive endorsement written by the maker strongly suggested that he was fully aware of the nature of the tender. The court further held that even if he were not, the endorsement was stated in such a way that any reasonable reader would fully understand that the check was tendered in full payment of all claims. Thus, this court concluded that plaintiff accepted the offer to compromise by negotiating the check. Eppling v. Jon-T Chemicals, Inc., 363 So.2d at 1265-1266.
To the extent that CMS relies on RTL Corporation v. Manufacturer’s Enterprises, Inc., 429 So.2d 855 (La.1983) and Fisch-bach and Moore, Inc. v. Cajun Electric Power Cooperative, Inc., 799 F.2d 194 (5th Cir.1986), we note that those cases are factually distinguishable from the instant case. In RTL Corporation, upon receipt of an invoice, the debtor responded by sending a letter to the creditor wherein he “challenged” several items on the invoice as well as the method of calculation. The creditor then proposed that the debtor pay the undisputed amount of charges. When the creditor was presented with a check marked “payment in full,” he immediately called the debtor and insisted that the check be considered only a partial payment and requested a meeting with the debtor to discuss the remainder. The debtor assented to their treatment of the check as partial payment and to again meet with them to discuss the remainder. Although the debtor agreed that the creditor insisted that the check be considered partial payment, the debtor testified that the creditor “silently let the demand pass Inwithout rejecting or acceding to it.” It was not until after the creditor received the debtor’s implied acceptance of the creditor’s proposal that the creditor substituted the words “partial payment” for “payment in full” on the check stub and deposited the check. RTL Corporation v. *814 Manufacturer’s Enterprises, Inc., 429 So.2d at 856-857. The court concluded finding that “the parties’ subsequent negotiations on the remaining areas of dispute indicate that they did not consider this check as the final resolution of their differences.” RTL Corporation v. Manufacturer’s Enterprises, Inc., 429 So.2d at 857. In the instant case, however, there was no such proposal by CMS or an acceptance thereof by Health Net prior to its negotiation of the check or after receiving Health Net’s letter explaining that it would not pay for the additional items.
Moreover, in Fischbach, although the letter that accompanied the check indicated that it was in full and final settlement, the check did not contain a “payment in full” restrictive endorsement, and a notation on the check stub provided that it was in payment of two specifically identified invoices. Upon receipt, the creditor sent a letter confirming that it was accepting the check as payment of the two invoices, but that it was not accepting the check in satisfaction of any other claims. Based upon inconsistencies in the transmittal letter and the check stub concerning the purpose of the payment, the court found material issues of fact that precluded a summary judgment based on accord and satisfaction. Fischbach and Moore, Inc. v. Cajun Electric Power Cooperative, Inc., 799 F.2d at 195-196. These facts are also distinguishable from the facts in the case at hand.
Considering the April 12, 2011 letter from Health Net expressly disputing all charges except the VISN 16 annual maintenance fee, the cover letter that accompanied the check, which clearly stated that the attached “check in the amount of $20,639.50, represented] payment in full for charges referenced in [CMS’s] invoice no. 5762,” and the check marked “PAYMENT IN FULL,” we ^reject CMS’s contention that material facts remain to preclude summary judgment because it did not understand that the payment was tendered in full settlement of the dispute. By negotiating the check marked “PAYMENT IN FULL,” and in doing so without any objection CMS is deemed to have accepted Health Net’s offer made in settlement of the claim. The plain wording on the face of the check made it clear that this was not an unconditional tender. See River Bend Capital, L.L.C. v. Lloyd’s of London, 63 So.3d at 1096; cf. Leray v. Nissan Motor Corporation in U.S.A., 2005-2051 (La.App. 1st Cir.11/3/06), 950 So.2d 707, 710 (the signing and negotiating of a check alone is sufficient to establish the requirements of a valid compromise agreement under LSA-C.C. art. 3071 that could form the basis for plea of res judica-ta where the check indicated it that was in full payment).
Thus, these arguments lack merit.
Assignment of Error Number Two
In its second assignment of error. CMS contends that since matters of knowledge and Intent are material and are at issue herein, summary judgment is not appropriate. To the extent that CMS contends that its understanding and intent are material factual issues that remain in dispute, we note that on review of the grant of summary judgment, the only factual issues relevant to the defense of accord and satisfaction are whether there was (1) a disputed claim; (2) a tender of a check for less than the amount of the claim by the debt- or, and (3) an acceptance of the tender by the creditor. See River Bend Capital. L.L.C. v. Lloyd’s of London, 63 So.3d at 1096.
Here, CMS was expressly informed or aware (1) that Health Net was not going to pay the remaining charges in CMS invoice # 5762; (2) that the check tendered represented payment in full for the charges *815 contained in CMS invoice # 5762; and (3) that the check bore the notation “PAYMENT IN FULL.” While |iswe recognize that there can be no accord and satisfaction if the written notice is insufficient to put the creditor on notice of the nature of the compromise being offered, Ryan v. State Farm Mutual Automobile Insurance Company, 68 So.3d at 569, we find the written notice sent by Health Net was clear and sufficient. The April 12, 2011 letter from Health Net, combined with the cover letter accompanying the check, combined with the notation on the front of the check, establish that CMS was fully informed of the nature of the payment by Health Net.
Specifically, on review, we find the evidence set forth by Health Net established that CMS was sufficiently informed of the basis and nature of the payment by Health Net and that after being informed of the basis for the check CMS negotiated the check. Thus, we find no material factual issues remain as to the elements set forth above.
Accordingly, this assignment of error by CMS also lacks merit.
CONCLUSION
For the above and foregoing reasons, the January 11, 2013 judgment of the trial court, granting summary judgment in favor of Health Net Federal Services, L.L.C. and dismissing all claims asserted by Complete Medical Solutions, L.L.C., is hereby-affirmed. Costs of this appeal are assessed to the plaintiff/appellant, Complete Medical Solutions, L.L.C.
AFFIRMED.

. According to the affidavit of David R. Feni-ger, Executive Counsel for Health Net, "repricing” is the process of comparing VA allowable rates based on fees charged by non-VA health care providers to rates that the contractor may have established with health care providers who are part of their network.

. According to the markings on the back of the check, the check was processed and deposited by CMS on May 13, 2011.

. To the extent that CMS relies on McClelland v. Security Industrial Insurance Company. 426 So.2d 665, 669-670 (La.App. 1st Cir.1982), writ denied, 430 So.2d 94 (La.1983), we find that McClelland is procedurally distinguishable from the instant case and not dispositive herein. In particular, in McClel-land, the plaintiff, who was uneducated and uninformed, established, without evidentiary objection, that she had been misinformed as to the basis for the check (i.e., that it was being issued as a premium refund in full settlement even after defendant's agent had informed her the policy would be honored and the claim paid). Thus, McClelland differs from this case, both factually and procedurally.