# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 7, 2013

Lyle W. Cayce
Clerk

No. 12-30096

COVES OF THE HIGHLAND COMMUNITY DEVELOPMENT DISTRICT,

Plaintiff-Appellant

v.

MCGLINCHEY STAFFORD, P.L.L.C.

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:09-CV-7251

Before BARKSDALE, DENNIS, and GRAVES, Circuit Judges.

PER CURIAM:[*]

In this appeal, Coves of the Highland Community Development District ("Coves") challenges the district court's grant of summary judgment to McGlinchey Stafford, P.L.L.C. ("McGlinchey") on Coves's state law legal malpractice claim. For the reasons set forth herein, we affirm.

## BACKGROUND

In March 2006, real estate development enterprise MGD Partners, LLC ("MGD") purchased property outside the city of Hammond in Tangipahoa Parish,

---

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

No. 12-30096

Louisiana with the goal of developing a residential subdivision. MGD formed Coves in order to issue community development district bonds to fund the development. Through a June 28, 2006 Engagement Letter, Coves retained McGlinchey to act as bond counsel in connection with the issuance of the bonds. Crews and Associates underwrote and purchased the $7,695,000 in bonds, and in November 2006 offered the bonds for re-purchase through a "Limited Offering Memorandum."

On March 9, 2009, the U.S. Army Corps of Engineers published a notice in the Hammond newspaper announcing that it had completed a site inspection of the World War II-era Hammond Bombing and Gunnery Range. Among other things, this notice revealed that portions of the property MGD had purchased were part of the former bombing and gunnery range. The Army Corps of Engineers's inspection report stated that there was a potential for unexploded ordnance and munitions and explosives of concern on the site. On April 23, 2009, the Tangipahoa Parish Engineer notified MGD that it would not issue further building permits or approvals until these risks had been investigated and remediated. Development of the Coves of the Highland project ground to a halt and Coves subsequently defaulted on the community development district bonds.

On November 10, 2009, Coves filed this suit, alleging in pertinent part that McGlinchey committed legal malpractice by failing to ensure that an environmental assessment had been performed that in turn allegedly would have revealed the issues relating to the property's prior use. After discovery, McGlinchey moved for summary judgment, arguing that Coves had failed to introduce evidence creating a fact issue as to whether McGlinchey's obligations as bond counsel included any such duty. The district court granted the motion for summary judgment in a reasoned opinion dated January 4, 2012. The district court reasoned that nothing in the Engagement Letter committed

2

No. 12-30096

McGlinchey to any duty regarding environmental due diligence and that the extrinsic evidence proffered by Coves likewise failed to create a triable issue of material fact.

## DISCUSSION

"We review de novo the district court's grant of summary judgment. Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Greenwood 950, L.L.C. v. Chesapeake Louisiana, L.P.*, 683 F.3d 666, 668 (5th Cir. 2012) (footnote omitted); *see* Fed. R. Civ. P. 56(a). Once "the moving party . . . demonstrat[es] the absence of a genuine issue of material fact[,] . . . [i]t is then up to the nonmoving party, going beyond the pleadings, to point to 'specific facts showing that there is a genuine issue for trial.'" *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

"Louisiana jurisprudence provides that to establish a claim for legal malpractice, a plaintiff must prove: 1) the existence of an attorney-client relationship; 2) negligent representation by the attorney; and 3) loss caused by that negligence." *Teague v. St. Paul Fire & Marine Ins. Co.*, 974 So. 2d 1266, 1272 (La. 2008). Under Louisiana law, "[t]he attorney-client relationship is contractual in nature and is based upon the express agreement of the parties as to the nature of work to be undertaken by the attorney." *Grand Isle Campsites, Inc. v. Cheek*, 262 So. 2d 350, 359 (La. 1972). Under the Louisiana Civil Code, "the '[i]nterpretation of a contract is the determination of the common intent of the parties.'" *Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 258 (La. 2010) (alteration in original) (quoting La. Civ. Code. art. 2045). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. The Louisiana Supreme Court has explained that "[t]he agreement or

consent of an attorney to perform work for a party on a particular matter or transaction does not create an attorney-client relationship as regards other business or affairs of the client." *Grand Isle Campsites*, 262 So. 2d at 359.

In arguing that McGlinchey owed it a duty to perform environmental due diligence that would have uncovered the issues relating to the property's former use, Coves points to language in the Engagement Letter indicating that "[McGlinchey] will render [its] legal opinion as bond counsel . . . regarding [inter alia] the source of payment and security for the Bonds." Coves asserts that the ultimate source for repayment of the community development district bonds was dependent on its ability to sell the subdivided lots, such that McGlinchey's agreement to opine as to the "source of payment and security for the Bonds" obligated it to perform due diligence as to potential issues affecting the marketability of the underlying real estate. McGlinchey counters that the bonds were not secured by the real estate itself but rather by assessments that were to be levied against the subdivided lots, and cites other language in the Engagement Letter stating that McGlinchey would rely on Coves for "complete and timely information on all developments pertaining to the Bonds, including . . . matters relating to the security for the Bonds."

We need not decide definitively the meaning the parties intended by these references to "the source of payment and the security for the Bonds" in order to conclude that the district court's grant of summary judgment was proper. The Engagement Letter does not by its terms obligate McGlinchey to perform environmental due diligence or otherwise investigate the property's former uses. Thus, at the very most, the contract is ambiguous as to this issue. But even assuming that the Engagement Letter is potentially susceptible to Coves's favored interpretation, such that reference to the extrinsic evidence introduced by the parties and considered by the district court is appropriate, Coves has

failed to create a genuine issue as to whether the parties intended that McGlinchey perform environmental due diligence.

To begin with, the record indicates and Coves acknowledges that the developer, MGD, had already purchased the property when Coves retained McGlinchey as bond counsel. McGlinchey did not represent Coves or MGD at the time of or in connection with MGD's purchase of the property.[1] Moreover, Coves points to no evidence in the summary judgment record indicating that the parties had any intention that McGlinchey would be responsible for ensuring that an environmental assessment was performed. To the contrary, the parties agreed in the Engagement Letter that McGlinchey would rely on Coves to supply it with information regarding the development. In addition, the Limited Offering Memorandum specifically adverts to a "Phase I Environmental Assessment" performed by the engineering and land surveying firm of Bodin and Webb and further states that "[t]he land was previously used for agricultural purposes and forest land," with no mention of the property's former use as part of a military bombing and gunnery range.

Finally, contrary to Coves's arguments on appeal, the district court did not err in explaining that neither the opinion letter Coves submitted from real estate attorney Sean Rafferty nor the pages that Coves submitted from a Louisiana real estate treatise generated a fact issue as to McGlinchey's alleged duty. Rafferty opined that "an attorney representing a client intending to conduct a Louisiana commercial real estate development project has a professional duty to advise his client of the acute need to obtain appropriate environmental

---

[1] Thus, the absence of duty here is even clearer than in the Louisiana Supreme Court's decision in *Grand Isle Campsites*, where an attorney retained solely to "pass the act of sale" at the end of a multi-step real estate transaction "was not called upon to give his opinion as to the wisdom of the [real estate] venture, the reasonableness of the price or any other affairs of the [development] corporation." *Grand Isle Campsites*, 262 So. 2d at 358-59. Here, analogously, MGD's purchase of the property "had been settled to the satisfaction of all concerned prior to [McGlinchey's] involvement" as bond counsel. *See id.* at 359.

reviews of the project property" and that "[s]tandard environmental reviews disclose whether real property likely contain hazardous substances." However, as already noted, McGlinchey did not represent MGD in connection with the purchase of the property.[2] Meanwhile, the treatise's discussion of environmental due diligence, upon which Coves relies, states: "As a result of the liability that can be imposed upon transferees of property on which hazardous substances are stored or released, *potential* purchasers should conduct an investigation into the previous ownership and use of the property." Peter S. Title, 2 Louisiana Real Estate Transactions 566 (2011) (emphasis added). The next section explains that "[a] Phase I environmental assessment or survey" is a study conducted by "*a qualified environmental firm*" that "identifies areas of environmental concern using historical usage and visual inspections" and in which, inter alia, "[h]istorical information for the property and adjacent properties is established, ownership history is traced, past and present operations and processes are identified, regulatory history is researched, knowledgeable persons are interviewed, and past environmental investigations and cleanups are reviewed." *Id.* (emphasis added). Again, however, McGlinchey did not represent MGD and MGD was not a "potential purchaser" when Coves retained McGlinchey because the purchase of the problematic property had already been completed. And the record shows that not McGlinchey but rather the engineering and surveying firm, Bodin and Webb, was responsible for the "Phase I Environmental Assessment."

---

[2] By contrast, McGlinchey provided an opinion letter from a professional bond attorney who specifically opined that "unless separately engaged, it is outside the scope of bond counsel's duties to investigate matters relating to the real property encompassed within the boundaries of an assessment district beyond receiving evidence satisfactory to bond counsel as to the ownership of the property so that proper consents and notices may be given and received regarding formation of the district and assessment of the benefits." Under Louisiana law, "[t]he customs of the industry may be considered when construing ambiguous contracts." *Kenner Industries, Inc. v. Sewell Plastics, Inc.*, 451 So. 2d 557, 560 (La. 1984).

No. 12-30096

Accordingly, assuming that the Engagement Letter's silence as to environmental due diligence does not in itself foreclose Coves's claim, the summary judgment record confirms that the parties had no intention for McGlinchey's duty as bond counsel to extend to such matters. Coves points to no evidence creating a genuine dispute of material as to this essential element of its state law legal malpractice claim.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.