STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2021 CA 0678

JAMES B. CANTRELLE, IN HIS OFFICIAL CAPACITY AS THE
PRESIDENT OF THE PARISH OF LAFOURCHE

VERSUS

THE LAFOURCHE PARISH COUNCIL

JUDGMENT RENDERED:    **FEB 0 1 2022**

* * * * * * *

Appealed from
The Seventeenth Judicial District Court
Parish of Lafourche • State of Louisiana
Docket Number 137931 • Division D

The Honorable Christopher J. Boudreaux, Presiding Judge

* * * * * * *

| | |
|---|---|
| Kristine Russell<br>*District Attorney*<br>Lisa Orgeron<br>Joseph S. Soignet<br>*Assistant District Attorneys*<br>Thibodaux, Louisiana | COUNSEL FOR APPELLANT 1<br>DEFENDANT—Parish of<br>Lafourche |
| Michael G. Gee<br>Mallory Fields Maddocks<br>Thibodaux, Louisiana | COUNSEL FOR APPELLANT 2<br>NOMINAL PLAINTIFF—Archie<br>Chaisson, III, in his official capacity<br>as the President of the Parish of<br>Lafourche |
| Stephen J. Haedicke<br>New Orleans, Louisiana | COUNSEL FOR APPELLEE<br>PLAINTIFF—James B. Cantrelle, in<br>his individual capacity as a former<br>employee of the Parish of Lafourche,<br>and in his official capacity as the<br>former President of the Parish of<br>Lafourche |
| Kristine Russell<br>*District Attorney*<br>Lisa Orgeron<br>Joseph S. Soignet<br>*Assistant District Attorneys*<br>Thibodaux, Louisiana | COUNSEL FOR APPELLEE<br>INTERVENOR—Kristine Russell,<br>in her official capacity as the<br>District Attorney for the Parish of<br>Lafourche |

* * * * * * *

**BEFORE: MCCLENDON, WELCH, AND THERIOT, JJ.**

Theriot, J. Agrees and assigns additional reasons

McClendon, J. dissents in part and assigns reasons

**WELCH, J.**

In this suit for declaratory judgment and mandatory injunction, the appellants seek reversal of a judgment ordering the payment of past due compensation. We affirm.

## FACTS AND PROCEDURAL HISTORY

The Lafourche Parish Government, or the Parish of Lafourche (the "Parish"), is a political subdivision operating in Lafourche Parish and is governed by a Home Rule Charter ("Charter").[1] The Charter provides for the office of the President of the Parish of Lafourche (the "Parish President").[2] The Charter sets the Parish President's salary as $65,000.00, effective January 2008.[3] The Charter also gives the Lafourche Parish Council (the "Council") the power to change the Parish President's salary, subject to two restrictions: the Council may not enact any salary ordinance during the last year of their terms in office, nor can any salary change take effect during the terms of office of the Council members who enact the change.[4]

James B. Cantrelle was elected Parish President and assumed office on January 1, 2016, serving until his term ended on December 31, 2019. During his term, Mr. Cantrelle—in his official capacity as Parish President—filed suit for declaratory judgment on March 11, 2019, naming the Council as the sole defendant. Mr. Cantrelle sought a judicial interpretation of Lafourche Parish Ordinance No. 5444 ("the ordinance"). The ordinance, adopted by the Council on April 8, 2014, sought to establish a salary for the Parish President, beginning with

---

[1] See **Russell v. Cantrelle**, 2018-1762, 2019-0815 (La. App. 1st Cir. 5/11/20), 303 So.3d 1081, 1083; see also **Russell v. Cantrelle**, 2019-0284 (La. App. 1st Cir. 2/21/20), 2020 WL 859515, at *1 (unpublished).

[2] **Lafourche Parish Home Rule Charter**, Article III, Section 3. The Executive Branch, A. The President.

[3] **Lafourche Parish Home Rule Charter**, Article III, Section 5. Compensation.

[4] **Id.**

the Parish President's term of office commencing January 1, 2016 (*i.e.*, Mr. Cantrelle's term). The ordinance provided, in pertinent part:

> **SECTION 2.** The compensation of the Parish President be established based on the prior year average compensation of the Parish-wide positions of the Lafourche Parish Sheriff, Clerk of Court[,] and the Assessor.

In his petition, Mr. Cantrelle averred that a dispute arose between him and the Council as to the proper interpretation of the term "compensation" as contained in the ordinance. Mr. Cantrelle argued that "compensation" referred to the statutory compensation received by the three referenced officials, while the Council maintained that "compensation" referred to only the base salaries of those three officials. Accordingly, Mr. Cantrelle sought a declaration of the proper interpretation of "compensation":

> [Mr. Cantrelle] prays that this Honorable Court render judgment declaring that ... the proper interpretation of Ordinance 5444 requires that the full statutory compensation paid to each of the three elected offices (Sheriff, Clerk of Court, and Assessor) must be averaged to determine the Parish President's compensation for each year beginning in January 2016 until the amended version of Ordinance 5444 takes effect.

A month later, on April 10, 2019, Mr. Cantrelle filed a supplemental and amended petition for declaratory judgment and mandatory injunction against the Council. He did not name any new defendants. Mr. Cantrelle reiterated his prayer for a declaration of the proper interpretation of "compensation" as contained in the ordinance.[5] Mr. Cantrelle requested that a mandatory injunction issue consistent

---

[5] Mr. Cantrelle prayed as follows:

> Petitioner seeks a declaratory judgment declaring that until the commencement of the next term of office on January 1, 2020, Ordinance 5444 must be interpreted to include both the base salary and other statutorily authorized payments as the "compensation" for the three elected offices (Sheriff, Clerk of Court, and Assessor). The judgment should provide that proper interpretation of Ordinance 5444 requires that the full statutory compensation paid to each of these offices must be averaged to determine the Parish President's compensation, and not just the base salaries paid to these offices. The judgment should further provide that this interpretation of the Ordinance controls the Parish President's salary for the years 2016, 2017, 2018, and 2019.

3

with the declaratory judgment that ordered "Lafourche Parish" to pay him the correct salary amount for the year 2019, as well as any back pay owed to him under the correct interpretation of the ordinance for the years 2016, 2017, and 2018.[6]

On April 16, 2019, Kristine Russell, in her official capacity as the District Attorney for the Parish of Lafourche, filed a petition for intervention, which the district court granted in an order signed on April 17, 2019. As intervenor, the District Attorney filed various exceptions to Mr. Cantrelle's original and amended petitions, including a dilatory exception raising the objection of lack of procedural capacity, alleging that the Council was merely the legislative branch of the Parish and did not have the capacity to sue or be sued under the Charter. She also raised the objection of prematurity, arguing that because Mr. Cantrelle filed suit in his official capacity as Parish President, he was bound by the provisions of the Charter to seek Council approval before initiating litigation and obtaining counsel for himself. The District Attorney filed a declinatory exception raising insufficiency of service of process, alleging that Mr. Cantrelle's petitions had only been served on the Council's clerk, who was not a designated agent for service of process and did not have authority to accept service on behalf of a non-juridical entity, the Council. The District Attorney filed a peremptory exception raising the objection of no cause of action, arguing that a judgment could not be obtained against a non-juridical entity, the Council. The District Attorney also raised the objection of prescription, arguing that the three-year liberative prescriptive period set forth in La. C.C.P. art. 3494 applied to Mr. Cantrelle's claim for monetary damages raised

---

[6] Mr. Cantrelle's request that the Parish pay him past due compensation, raised as a request for mandatory injunction—and brought in conjunction with his declaratory judgment action—was an appropriate method of demanding "further relief" as provided for in La. C.C.P. art. 1871, in the event that Mr. Cantrelle prevailed on his demand for declaratory relief. See **Fishbein v. State ex rel. Louisiana State Univ. Health Scis. Ctr.**, 2004-2482 (La. 4/12/05), 898 So.2d 1260, 1272-73 (citing **Chauvet v. City of Westwego**, 599 So.2d 294, 296 (La. 1992) (per curiam)).

in his supplemental and amended petition.[7] The District Attorney contended that all claims for compensation due Mr. Cantrelle that were earned prior to April 10, 2016—three years before he first made the request in his supplemental and amended petition—were prescribed.[8]

Mr. Cantrelle answered the District Attorney's petition for intervention, entering general denials. He also filed a peremptory exception raising the objection of no cause of action, arguing that the Louisiana Rules of Professional Conduct prohibited the District Attorney from taking a position adverse to the Parish President, describing himself as the District Attorney's "purported statutory client." Mr. Cantrelle further argued that the District Attorney lacked standing to intervene in this matter because she was an unaffected third party who had no interest in his declaratory judgment and mandatory injunction suit.[9]

The district court held a hearing on all exceptions on August 16, 2019. In a judgment signed on October 23, 2019, the trial court denied Mr. Cantrelle's peremptory exception raising the objection of no cause of action and also denied the District Attorney's dilatory exception raising the objection of prematurity. As to the District Attorney's dilatory exception raising the objection of lack of procedural capacity, declinatory exception raising the objection of insufficiency of service of process, and peremptory exception raising the objection of no cause of action—the trial court granted the exceptions as to the request for mandatory injunction, but denied the exceptions as to the request for declaratory judgment. The trial court also granted the District Attorney's objection of prescription for all

---

[7] Louisiana Civil Code article 3494(1) sets forth that "[a]n action for the recovery of compensation for services rendered" is "subject to a liberative prescription of three years[.]"

[8] Mr. Cantrelle opposed the District Attorney's exceptions.

[9] The District Attorney opposed Mr. Cantrelle's exception. Mr. Cantrelle filed a reply to the opposition, which the District Attorney rebutted.

of Mr. Cantrelle's claims arising before March 11, 2016.[10] The trial court granted Mr. Cantrelle sixty days to amend his petitions to remove the grounds upon which the granted exceptions were based.

On October 9, 2019, Mr. Cantrelle filed a second supplemental and amended petition for declaratory judgment and mandatory injunction. Mr. Cantrelle filed this petition in both his official capacity as the Parish President and in his individual capacity as an employee of the Parish. He again named the Council as a defendant, but also added the Parish of Lafourche a/k/a Lafourche Parish as a defendant. Mr. Cantrelle reiterated his claims for declaratory and injunctive relief raised in his prior petitions. The Parish filed an answer, and re-urged the dilatory exception raising the objection of lack of procedural capacity as to the Council.

Mr. Cantrelle's term in office as the Parish President expired on December 31, 2019. Thereafter, the new Parish President—Archie Chaisson, III—was substituted as party plaintiff in place of Mr. Cantrelle, in his official capacity as Parish President. The substitution did not affect Mr. Cantrelle's rights in his individual capacity as a former employee of the Parish.

On February 11, 2020, the district court held a trial on Mr. Cantrelle's request for declaratory judgment.[11] Following the introduction of evidence and argument of counsel, the district court declared the meaning of "compensation" as contained in the ordinance to be:

> The Court hereby declares the meaning of Lafourche Parish Ordinance No. 5444, and determines that the compensation owed to the Lafourche Parish President pursuant [to] said ordinance shall include, in the calculation, all supplemental pay, compensation[,] or

---

[10] Mr. Cantrelle filed his original suit for declaratory judgment on March 11, 2019. Pursuant to La. C.C. art. 3494(1)'s three-year prescriptive period, all claims arising three years prior to that date would be prescribed.

[11] See La. C.C.P. arts. 1871, 1879, and 2592; see also **Apasra Properties, LLC v. City of New Orleans**, 2009-0709 (La. App. 4th Cir. 2/11/10), 31 So.3d 615, 626-27 ("A claim for declaratory relief is not a summary proceeding; it requires a trial on the merits where each party has an opportunity to present evidence in a form other than verified pleadings and affidavits.").

benefits received by the Sheriff, Clerk of Court, and Assessor, for whatever reason.

The district court signed a judgment in accordance with its oral ruling on March 23, 2020.[12]

On April 16, 2020, the district court granted Mr. Cantrelle leave to file a third amended and supplemental petition for declaratory judgment, mandatory injunction, and relief under La. R.S. 23:631-32. Therein, Mr. Cantrelle again asserted his entitlement to monetary damages, specifically past due wages, due to him during his term of office as the Parish President under the district court's declared interpretation of the ordinance. Mr. Cantrelle also sought penalties and attorney's fees based on the Parish's alleged failure to pay what is due him under the terms of his former employment by the Parish, pursuant to La. R.S. 23:631-32.[13] Mr. Cantrelle incorporated by reference all other allegations from his second supplemental and amended petition.

Mr. Chaisson filed an answer to Mr. Cantrelle's third amended and supplemental petition, entering general denials. The Parish also filed an answer to Mr. Cantrelle's third amended and supplemental petition. The Parish argued that La. R.S. 23:631-32 did not apply to Mr. Cantrelle's claims since he held public office and was thus exempted from the wage payment provisions set forth in those statutes.[14] In its answer, the Parish also raised the affirmative defenses of accord and satisfaction and contributory and/or comparative fault of Mr. Cantrelle, for his acts in calculating, proposing, certifying, and accepting the compensation he received during his term in office as Parish President. The Parish argued that to the extent Mr. Cantrelle's compensation deviated from the amounts claimed in his

---

[12] See La. C.C.P. art. 1871.

[13] At the hearing on the mandatory injunction, Mr. Cantrelle stipulated that this claim was abandoned.

[14] In support of its argument, the Parish cited La. R.S. 23:1034(B) of the Louisiana Workers' Compensation Law, which exempts public officials from workers' compensation coverage.

7

amending petitions, it was solely due to his own negligence and lack of due diligence. The Parish contended that the Parish President proposes a yearly budget to the Council, which includes a certification of his own salary, for which the Parish President is solely responsible.

Mr. Chaisson also filed a peremptory exception raising the objection of prescription as to Mr. Cantrelle's claims for past due wages arising three years prior to October 9, 2019. Mr. Chaisson argued that until Mr. Cantrelle filed his second supplemental and amended petition on October 9, 2019—wherein he finally named the Parish as a defendant—Mr. Cantrelle had not yet named the proper party defendant in this litigation. Mr. Chaisson argued that the October 9, 2019 second supplemental and amending petition did not relate back to the original filing date of the declaratory action on March 11, 2019. Because the Council and the Parish are not solidary obligors or joint tortfeasors, he argued that suit against the Council (the originally named defendant) did not interrupt prescription as to the claims against the Parish. Furthermore, Mr. Chaisson contended that the original petition did not contain a claim for monetary damages, but merely sought declaratory judgment. The Parish joined Mr. Chaisson in urging the objection of prescription.

On March 15, 2021, the district court held an evidentiary hearing on Mr. Cantrelle's remaining claims for mandatory injunction and monetary damages.[15] At the start of the hearing, the district court sustained Mr. Chaisson and the Parish's objection of prescription for all of Mr. Cantrelle's claims arising more than three years prior to April 10, 2019, the filing date of the supplemental and amended petition, wherein Mr. Cantrelle first sought a mandatory injunction and

---

[15] See La. C.C.P. arts. 3601 and 3602; see also **Concerned Citizens for Proper Plan., LLC v. Par. of Tangipahoa**, 2004-0270, 2004-0249 (La. App. 1st Cir. 3/24/05), 906 So.2d 660, 664 ("A mandatory injunction, so named because it commands the doing of some action, cannot be issued without a hearing on the merits. ... [T]he party must show by a preponderance of the evidence at an evidentiary hearing that he is entitled to the preliminary injunction.").

8

monetary damages. Thereafter, the district court heard witness testimony and entered exhibits into evidence, including an exhibit proffered by Mr. Chaisson.

Following the hearing, the district court gave oral reasons for ruling and took the matter under advisement to prepare a judgment. Thereafter, the district court rendered judgment on March 30, 2021, in favor of Mr. Cantrelle and against the Parish[16] for past due compensation in the following amounts: $46,272.00 for 2016 (prorated from April 10, 2016); $49,555.00 for 2017; $54,749.00 for 2018; and $30,662.00 for 2019. The district court assessed legal interest on $150,576.00 for the years 2016-2018 (commencing April 10, 2019), and on $30,662.00 for the year 2019 (commencing January 1, 2020).[17]

The Parish[18] and Mr. Chaisson now appeal.[19]

## STANDARD OF REVIEW

The purpose of the declaratory judgment articles of the Louisiana Code of Civil Procedure is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and they are to be liberally construed and administered. La. C.C.P. art. 1881; **Blanchard v. Blanchard**, 2012-0106 (La. App. 1st Cir. 12/31/12), 112 So.3d 243, 255, writ denied, 2013-0488 (La. 4/12/13), 111 So.3d 1013. We review a trial court's decision to grant or deny a declaratory judgment under the "abuse of discretion" standard of review. **Mai v. Floyd**, 2005-2301 (La. App. 1st Cir. 12/6/06), 951 So.2d 244, 245, writ denied,

---

[16] The district court's March 30, 2021 judgment referred to the Parish as the "Lafourche Parish Consolidated Government."

[17] The district court showed its calculations set forth in its March 30, 2021 judgment in an exhibit attached to the judgment labeled, "Exhibit A." We have attached the judgment, Ex. A to the judgment, and an "Explainer" of Ex. A to this court's opinion.

[18] The Parish of Lafourche filed a motion for a suspensive appeal of the district court's March 30, 2021 judgment. The district court signed an order of appeal on April 15, 2021, notice of which was transmitted by the Clerk of Court on April 16, 2021.

[19] Mr. Chaisson filed a motion for a suspensive appeal of the district court's March 30, 2021 judgment. The district court signed an order of appeal on April 30, 2021, notice of which was transmitted by the Clerk of Court on May 3, 2021.

2007-0581 (La. 5/4/07), 956 So.2d 619. The scope of appellate review under the "abuse of discretion" standard is confined to a determination of whether or not the trial court abused its discretion by granting or refusing to render a declaratory judgment. **Roper v. E. Baton Rouge Metro. Council**, 2015-0178 (La. App. 1st Cir. 11/6/15), 183 So.3d 550, 553, writ denied, 2015-2231 (La. 2/5/16), 186 So. 3d 1166.

A mandatory injunction is one that commands the doing of some action, and cannot be issued without a hearing on the merits. The jurisprudence has established that a mandatory preliminary injunction has the same basic effect as a permanent injunction, thus, it may not be issued on merely a *prima facie* showing that the party seeking the injunction can prove the necessary elements. Instead, the party seeking a mandatory injunction must show by a preponderance of the evidence[20] at an evidentiary hearing that he is entitled to the preliminary injunction. **City of Baton Rouge/Par. of E. Baton Rouge v. 200 Gov't St., LLC**, 2008-0510 (La. App. 1st Cir. 9/23/08), 995 So.2d 32, 36, writ denied, 2008-2554 (La. 1/9/09), 998 So.2d 726. The issuance of a mandatory preliminary injunction addresses itself to the sound discretion of the trial court and will not be disturbed on review unless a clear abuse of discretion has been shown. **Concerned Citizens for Proper Plan., LLC v. Par. of Tangipahoa**, 2004-0270, 2004-0249 (La. App. 1st Cir. 3/24/05), 906 So.2d 660, 663. Where the standard of review is an abuse of discretion, the role of the reviewing court is not to determine what it considers to be an appropriate award, but rather it is to review the exercise of discretion by the trier of fact. **Covington v. McNeese State Univ.**, 2012-2182 (La. 5/7/13), 118 So.3d 343, 351.

---

[20] Proof by a preponderance of the evidence means that the evidence, taken as a whole, shows that the fact or cause sought to be proven is more probable than not. **Crowell v. City of Alexandria Through Snyder**, 558 So.2d 216, 218 (La. 1990).

# LAW AND DISCUSSION

## Parish's Assignment of Error 1: Interpretation of Ordinance 5444

In its first assignment of error, the Parish contends that the district court erred in its interpretation of the term "based on" contained in the ordinance. The Parish argues that the trial court interpreted "based on" to mean that the ordinance guarantees the President a specific salary. The Parish avers that the ordinance should be interpreted to mean that the Parish President's salary be "based on" the average salaries of Sheriff, Clerk of Court, and Assessor as a starting point, subject to the mandatory budgetary process outlined in the Charter.

The statutory and jurisprudential rules for statutory construction and interpretation apply to ordinances. See **Varner v. Day**, 2000-2104 (La. App. 1st Cir. 12/28/01), 806 So.2d 121, 125. The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government. **Theriot v. Midland Risk Ins. Co.**, 95-2895 (La. 5/20/97), 694 So.2d 184, 186. The rules of statutory construction are designed to ascertain and enforce the intent of the legislative body. See **Succession of Boyter**, 99-0761 (La. 1/7/00), 756 So.2d 1122, 1128. Legislation is the solemn expression of legislative will and, thus, the interpretation of legislation is primarily the search for the legislative intent. **Id.** The paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the legislative body to enact the law. See **Theriot**, 694 So.2d at 186.

The starting point in the interpretation of any statute is the language of the statute itself. **Id.** "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. C.C. art. 9. However, "when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the

11

law." La. C.C. art. 10. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole, and laws on the same subject matter must be interpreted in reference to each other. La. R.S. 1:3; La. C.C. arts. 12 and 13; **Pumphrey v. City of New Orleans**, 2005-0979 (La. 4/4/06), 925 So.2d 1202, 1210. The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting it. **Pumphrey**, 925 So.2d at 1210.

A legislative body is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject. See **State v. Campbell**, 2003-3035 (La. 7/6/04), 877 So.2d 112, 117. Thus, legislative language will be interpreted on the assumption the legislative body was aware of existing statutes and ordinances, well-established principles of statutory construction, and with knowledge of the effect of their acts and a purpose in view. **Id.** Where it is possible, courts have a duty in the interpretation of a statute or ordinance to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter. See La. C.C. art. 13; see also **City of New Orleans v. Louisiana Assessors' Retirement and Relief Fund**, 2005-2548 (La. 10/1/07), 986 So.2d 1, 15.

Lafourche Parish Ordinance 5444 provides, in pertinent part:

**ORDINANCE No.  5444**

**AN ORDINANCE AMENDING AND RE-ENACTING CHAPTER 2 – ADMINISTRATION, ARTICLE III - PROVISIONS GOVERNING OPERATIONS OF PARISH GOVERNING BODY, DIVISION 1 - GENERALLY, SECTION 2-68 (PARISH PRESIDENT'S SALARY) OF THE LAFOURCHE PARISH CODE OF ORDINANCES, AS IT PERTAINS TO ESTABLISHING THE SALARY OF THE LAFOURCHE PARISH**

**PRESIDENT, EFFECTIVE WITH THE NEXT TERM OF OFFICE, YEAR 2016.**

**WHEREAS,** the Parish President's salary was last established in 2005 by Ordinance No. 3545[,] which increased the annual salary to $65,000.00; and

**WHEREAS,** Chapter 2, Article III, Division 1, Section 2-68 (Parish President's Salary) of the Lafourche Parish Code of Ordinances allows the Council to change the annual salary of the Parish President by ordinance; and

**WHEREAS,** the compensation rates for the Parish-wide positions of the Sheriff, Clerk of Court[,] and Assessor are established on an annual basis in accordance with a predetermined formula approved by the State Legislature; therefore

**BE IT ORDAINED,** by the Lafourche Parish Council, which convened in regular session on April 8, 2014, that:

**SECTION 1.** This Ordinance does hereby establish the Parish President's salary effective with the next term of office, Year 2016.

**SECTION 2.** The Compensation of the Parish President be established based on the prior year average compensation of the Parish-wide positions of the Lafourche Parish Sheriff, Clerk of Court[,] and the Assessor.

**SECTION 3.** The Human Resources Director shall annually certify the compensation of each of these elected positions (Sheriff, Clerk of Court, Assessor) beginning in August 2015 and each August thereafter to average and set the compensation of the Parish President taking office in January 2016 and each year thereafter.

**SECTION 4.** All Ordinances or parts of Ordinances by the Lafourche Parish Council conflicting with or inconsistent with the provisions of these regulations are hereby repealed.

\*\*\*

**SECTION 7.** This Ordinance shall become effective *January 1, 2016.*

By a vote of 7-1 (with one Council member absent), the Council approved the ordinance on April 14, 2014.

The Parish argues that the district court failed to reconcile its interpretation of the ordinance with the provisions of the Charter. In prior versions of ordinances setting the salary of the Parish President, the ordinances set forth a specific dollar amount for the salary. In contrast, Ordinance 5444 adopted a formula to be used in calculating the Parish President's salary ("based on the prior year average compensation of the Parish-wide positions of the Lafourche Parish Sheriff, Clerk of Court[,] and the Assessor"). The Parish contends that the ordinance's adoption of a formula involves the appropriation of funds, making the Parish President's salary subject to legislative deliberation under the mandatory budgetary process set forth in the Charter. The Parish avers that the mandatory budget adoption and amendment procedure contained in the Charter is the "exclusive method for appropriation of the Parish's funds."[21]

The Parish further argues that the use of the term "based on" rather than the mandatory term "shall" in the ordinance indicates that the drafters intended that the Parish President's salary be determined through the deliberative, mandatory budgetary process set forth in the Charter. The Parish contends that the formula averaging the salaries of the three officials is "the starting point for, and not the final determination of, the Parish President's salary." The Parish argues that the President as part of his annual budget proposal submits his salary to the Council. The Council then has a duty to adopt a balanced budget and may thus amend or adopt any line item. The Parish argues that this is "essentially a constitutional function reserved to the Council, which cannot be removed or modified by mere ordinance."

The Charter mandates that the Parish must adopt an annual operating budget and an annual capital budget.[22] Article VI, Section 1 of the Charter outlines the

---

[21] **Lafourche Parish Home Rule Charter**, Article VI, Section 1. The Annual Budgets.

[22] **Lafourche Parish Home Rule Charter**, Article III, Section 7. Budget.

procedure for the proposal and adoption of the annual budgets.[23] Under Article VI, Section 1(A), the Parish President has the "mandatory duty to prepare the proposed Parish budgets," which must be balanced.[24] The Parish President must submit a line item operating budget and capital budget to the Council at least ninety days before the beginning of each fiscal year.[25]

Thereafter, the Council has "a mandatory duty to take action on each budget no later than thirty (30) calendar days prior to the commencement of the ensuing fiscal year."[26] The Council may amend a budget, which must be balanced as amended. A budget is enacted "when it is voted upon favorably by at least a majority (5) of the voting members of the Council. If the Council fails to timely enact a budget, it shall be finally adopted as submitted by the President."[27]

The Parish President then has a mandatory duty—no later than ten days after the expiration of the Council's thirty-day period to act on a budget—to either sign the budget or veto any line item and sign approval of the remainder of the budget.[28] Any line item veto by the Parish President affects only an amendment made by the Council to a budget, not any line item as originally submitted by the President.[29] The President must note any action taken on each budget, and return it to the Council. If the President vetoes any item, he must prepare written reasons to attach to the budget prior to returning it to the Council. If the President fails to timely act

---

[23] **Lafourche Parish Home Rule Charter**, Article VI, Section 1. The Annual Budgets.

[24] **Lafourche Parish Home Rule Charter**, Article VI, Section 1. The Annual Budgets, A. Budget Preparation; Balanced Budget.

[25] **Lafourche Parish Home Rule Charter**, Article VI, Section 1. The Annual Budgets, B. Submittal of Budgets.

[26] **Lafourche Parish Home Rule Charter**, Article VI, Section 1. The Annual Budgets, E. Council Action on the Submitted Budgets, 4. Enactment of the Budgets by the Council.

[27] **Id.**

[28] **Lafourche Parish Home Rule Charter**, Article VI, Section 1. The Annual Budgets, F. Action of the President on an Enacted Budget, 1.

[29] **Lafourche Parish Home Rule Charter**, Article VI, Section 1. The Annual Budgets, F. Action of the President on an Enacted Budget, 1(b).

on a budget, it shall be finally adopted as enacted by the Council.[30]

The Council may then reconsider any vetoed line item at its next meeting, provided that such meeting take place prior to the beginning of the ensuing fiscal year. If the Council successfully overrides a Presidential veto (by a two-thirds majority, *i.e.*, six voting members), the Council must ensure that the resulting budget is balanced.[31]

A budget is adopted when: (1) the Council fails to timely enact (as outlined above); (2) the President fails to timely act (as outlined above); (3) the President signs a budget; (4) the President exercises line item veto power, and the Council fails to hold a meeting to override; or (5) the President exercises line item veto power, and the Council holds a meeting to override the veto, either succeeding or failing to do so.[32] A finally adopted budget becomes executory on the first day of the ensuing fiscal year.[33]

At the hearing on Mr. Cantrelle's mandatory injunction, the following exchange occurred:

> [Counsel for the Parish]
> Let me rephrase. [The ordinance] doesn't say that the [P]arish [P]resident salary is guaranteed to be the average of the compensation paid to the [C]lerk, [S]heriff, [A]ssessor, right? It doesn't say it is guaranteed.
>
> [The District Court]
> But that's the way I interpret it, counsel.
>
> [Counsel for the Parish]
> True.
>
> [The District Court]

---

[30] **Lafourche Parish Home Rule Charter**, Article VI, Section 1. The Annual Budgets, F. Action of the President on an Enacted Budget, 2.

[31] **Lafourche Parish Home Rule Charter**, Article VI, Section 1. The Annual Budgets, G. Council Action to Override a Presidential Veto.

[32] **Lafourche Parish Home Rule Charter**, Article VI, Section 1. The Annual Budgets, H. Final Adoption of the Budgets, 1-5.

[33] **Id.**

So you don't need to play those word games based on it's clear. It's a clear directive. That's what he's entitled to.

To adopt the Parish's suggested interpretation of the "based on" language would ignore the plain language of the ordinance and its structure as whole and would render the ordinance discretionary, despite the mandatory language contained therein. The ordinance provides that the "Lafourche Parish Code of Ordinances allows the Council to change the annual salary of the Parish President **by ordinance**...." (Emphasis added). Section 1 of the ordinance states "[t]his Ordinance **does hereby establish** the Parish President's salary...." (Emphasis added). The plain language of the ordinance establishes that the ordinance is the exclusive method by which the Parish President's salary be set. If the drafters of the ordinance intended that the Parish President's salary be set according to the budgetary process outlined in the Charter, it could have included that language in the ordinance; it did not.

It is also clear that the drafters of the ordinance intended that the ordinance establish a formula by which the Parish President's salary could be determined with certainty each year. The ordinance provides that "the compensation rates for the Parish-wide positions of the Sheriff, Clerk of Court[,] and Assessor are established on an annual basis in accordance with a predetermined formula approved by the State Legislature[.]" This clearly shows that the purpose of the ordinance was to establish a similar "predetermined formula" to calculate the Parish President's salary—specifically, "[t]he compensation of the Parish President be established based on the prior year average compensation of the Parish-wide positions of the Lafourche Parish Sheriff, Clerk of Court[,] and the Assessor." The ordinance's use of the term "based on" here conforms to a practical understanding that the "predetermined formula approved by the State Legislature" used to establish, with certainty, the salaries of the three referenced officials may change

17

year to year. Accordingly, the salary of the Parish President may change year to year using the formula set forth in the ordinance.

Based on the foregoing, we find no abuse of the trial court's discretion in its interpretation of the ordinance. See **Concerned Citizens for Proper Plan., LLC**, 906 So.2d at 663.

**Parish's Assignment of Error 2: Negligence/Accord & Satisfaction**

In its second assignment of error, the Parish argues that the district court erred in calculating the compensation owed to Mr. Cantrelle by failing to recognize that two affirmative defenses raised by the Parish in its answer to Mr. Cantrelle's third amended and supplemental petition precluded Mr. Cantrelle's recovery. The Parish argues that because Mr. Cantrelle set forth specific figures for his salaries in his annual budget proposals that were submitted to the Council, any negligence in the calculation and certification of those proposed salaries is entirely the fault of Mr. Cantrelle. The Parish further argues that the salaries Mr. Cantrelle received for his service in office were exactly what he proposed to the Council in his annual budget proposals, therefore, a form of accord and satisfaction occurred, and the received salary payments were tendered in full settlement of this dispute. Every year Mr. Cantrelle served in office—except for the year 2018 when the Council exercised its line item veto power to reduce the amount—Mr. Cantrelle received the salary he proposed.[34]

Louisiana courts have adopted a duty-risk analysis in determining whether to

---

[34] When Mr. Cantrelle began his term in 2016, his compensation had already been set for the year 2016 by the prior administration. The Parish President salary proposed for the year 2020 by Mr. Cantrelle was the first year of the Chaisson administration. The Parish contends that Mr. Cantrelle was paid the exact amounts he submitted in his budget proposals for the years 2017 and 2019.

impose liability under general negligence principles.[35] **Lemann v. Essen Lane Daiquiris, Inc.,** 2005-1095 (La. 3/10/06), 923 So.2d 627, 632-33. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. See **Bellanger v. Webre,** 2010-0720 (La. App. 1st Cir. 5/6/11), 65 So.3d 201, 207, writ denied, 2011-1171 (La. 9/16/11), 69 So.3d 1149.

The doctrine of accord and satisfaction estops a creditor from suing on a compromised debt. For there to be a valid accord and satisfaction of a debt or claim, there must be: (1) a disputed claim; (2) a tender of a check for less than the amount of the claim by the debtor, and (3) an acceptance of the tender by the creditor. **Complete Med. Sys., L.L.C. v. Health Net Fed. Servs., L.L.C.,** 2013-0367 (La. App. 1st Cir. 11/1/13), 136 So.3d 807, 810-11. Essential to finding that a valid accord and satisfaction occurred is a showing that the creditor understood that the payment was tendered in full settlement of the dispute. Thus, an accord and satisfaction is not present if there is no evidence that the creditor was fully informed of the nature of the compromise offer by the debtor. **Id.** at 811. Accord and satisfaction is an affirmative defense, and the party who asserts this defense shall be held to the strict proof thereof. See La. C.C. art. 1005. The party who pleads the defense has the burden of proving it by a preponderance of the evidence. In cases where its applicability is in doubt, it will not be applied. See **Reily Elec. Supply, Inc. v. Hollenberg,** 535 So.2d 1321, 1323 (La. App. 5th Cir. 1988), writ denied, 540 So.2d 331 (La. 1989).

Section 3 of the ordinance provides that the "Human Resources Director

---

[35] For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard of care (or the defendant owed a duty of care to the plaintiff) (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (or breached the requisite duty) (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the harm or the plaintiff's injuries (the cause-in-fact element); (4) the risk of harm was within the scope of protection afforded by the duty breached (the scope of the duty, scope of protection, or legal cause element); and (5) actual damages (damages element). See **Bellanger v. Webre,** 2010-0720 (La. App. 1st Cir. 5/6/11), 65 So.3d 201, 207, writ denied, 2011-1171 (La. 9/16/11), 69 So.3d 1149; see also **Lazard v. Foti,** 2002-2888 (La. 10/21/03), 859 So.2d 656, 659.

shall annually certify the compensation of each of these elected positions (Sheriff, Clerk of Court, Assessor) beginning in August 2015 and each August thereafter to average and set the compensation of the Parish President taking office in January 2016 and each year thereafter." At the evidentiary hearing, Thomas Lynn Lasseigne testified that he served as Mr. Cantrelle's Human Resources Director in 2016 and 2017. Mr. Lasseigne officially participated in certifying the Parish President's salary one time—in 2016, for the proposed 2017 budget.

When Mr. Cantrelle began his term in 2016, his compensation had already been set for the year 2016 by the prior administration. The 2016 proposed and enacted salary for the Parish President was $122,341.00. During that first year in office, Mr. Lasseigne began reviewing public reports from the Office of the Louisiana Legislative Auditor showing the compensation of the Sheriff, Clerk of Court, and Assessor to be used to average and establish the compensation of the Parish President for the upcoming 2017 fiscal year, since Mr. Lasseigne "was going to have to figure it out as HR director[.]" In reviewing the legislative auditor reports, Mr. Lasseigne discovered that Mr. Cantrelle's 2016 enacted salary was too low pursuant to the formula set forth in the ordinance. Mr. Lassigne testified that two reasons accounted for the inaccurate salary amount: 1) the then-unresolved dispute as to what amounts were included in "compensation;" and 2) timing of the receipt of the legislative auditor reports containing the compensation of two of the referenced officials (specifically, the Sheriff and the Clerk of Court, whose fiscal years run from July 1 to June 30, instead of the Parish and Assessor's January 1 to December 31 fiscal years).

The 2017 proposed and enacted Parish President salary was $142,502.00. Mr. Lassigne testified that after enacting the 2017 budgets, the Parish President's compensation would have to be adjusted to account for the six-month delay of receipt of the enacted salaries of the Sheriff and Clerk of Court needed to

accurately calculate the Parish President's compensation. Mr. Lasseigne testified that he believed the proper way to fix the discrepancy was through a budget amendment. Mr. Lasseigne spoke to the district attorney as to how to go about this process and later emailed the Parish's Director of Finance, Carrel F. Hymel, III, indicating that adjustments needed to be made to the Parish President's salary.

At some point in 2017, an attempt was made to reimburse Mr. Cantrell for the salary discrepancies via an internal budget amendment, as opposed to a formal budget amendment, since "there was money in the budget," and the ordinance was not properly followed. The Parish issued Mr. Cantrelle two checks in an agreed-upon total amount of $22,775.70 for the 2016 and 2017 salary discrepancies; however, the Parish requested that Mr. Cantrelle pay that amount back, which he did.

The 2018 proposed Parish President salary was $157,255.00. After the Council received the proposed 2018 budgets, it amended the proposed Parish President's salary to $124,376.00. The President exercised his line-item veto power of the Council amendment; the Council then overrode the Parish President's veto. The 2018 enacted amount for the Parish President's salary was $124,376.00. The 2019 proposed and enacted Parish President's salary was $160,536.00.

Then in 2019, Mr. Cantrelle initiated his suit for declaratory judgment, and amended his petition to request a mandatory injunction, alleging that he was underpaid pursuant to the ordinance establishing the Parish President's compensation.

Following the conclusion of evidence at the hearing, the district court reasoned:

> The Court does not accept the argument that because our [P]arish is governed by a Home Rule Charter[,] which has the equivalency of a constitution[,] which I agree with..., but I don't think it defeats the claim here. The Court cannot accept that as a prohibition against paying

what is owed. The issue really would be is it owed[,] or is the plaintiff guilty of some sort of[,] whether you want to call it contributory negligence, failure to do due diligence, such things, the Court will not find that any failures on the part of the plaintiff constituted a defense to the amount owed. This was clearly [an ordinance] that needed interpretation. It was not clear....

The [Council] itself denied the proposal that was submitted based upon an attempted interpretation of this [ordinance]. So the Court does not fault the [P]arish [P]resident or [his] administration from not properly calculating it clearly. It was not the fault of the [P]arish [P]resident in 2016. That was a budget submitted by the previous administration[,] and the [C]ourt can clearly understand that the difficulties in attempting to calculate it as testified to by Mr. Lasseigne because of the difference in the fiscal years between the parties and the clear confusion because of the various benefits [enjoyed by the three referenced officials].

\* \* \*

It's my understanding the ordinance was amended. The Court cannot ... fault the administration for not knowing how to calculate it. In fact, I think the administration did the right thing in returning the payment when it was called into question and submitting this petition for declaratory judgment to try to resolve these matters.

We agree with the district court that Mr. Cantrelle is not at fault for the discrepancies in the Parish President's compensation contained in the budgets he submitted to the Council for the years in question. The record clearly demonstrates that calculating the Parish President's salary in actual practice posed significant problems since the compensation for two of the referenced officials essential for use in the ordinance's formula were either not available or not finalized in a public report format at the time the Parish President was required to submit his proposed budgets to the Council as required by the Charter (at least ninety days before the beginning of each fiscal year, i.e., by September 1 at the latest[36]). This is further evidenced by the fact that the Council ultimately amended Ordinance 5444 to

---

[36] See **Lafourche Parish Home Rule Charter**, Article VI, Section 1. The Annual Budgets, B. Submittal of Budgets.

address the problem in the ordinance's practical application.[37]  We would not deprive the Parish President of his compensation because he did not have all the information at the time to calculate the exact amount.  For these reasons, we do not find that the district court erred in its determination that the affirmative defenses raised by the Parish precluded Mr. Cantrelle's recovery.

**Chaisson's Assignments of Error 1-3: Interpretation and Application of Ordinance; Proffered Exhibit**

In his first three assignments of error, Mr. Chaisson argues that the district court erred in its interpretation and application of the ordinance.  Mr. Chaisson contends that while the district court ruled that the compensation owed to the Parish President pursuant to the ordinance included all supplemental pay, compensation, or benefits, the district court actually failed to consider all supplemental pay, compensation, or benefits when performing its calculation. Specifically, Mr. Chaisson proffered an exhibit of excerpts from the legislative auditor reports showing the amounts received by the Parish President during his term in office, which Mr. Chaisson argues the district court should have used in calculating any back pay owed to Mr. Cantrelle.  Mr. Chaisson contends that the district court erred in excluding his proffered exhibit as not relevant.

Mr. Cantrelle argues in response that the district court *did* consider all relevant information from the proffered exhibit as is evidenced by the district court's oral reasons for ruling and Exhibit A attached to the district court's final judgment in this matter.  In fact, Mr. Chaisson himself admits in his appellant brief that "even though the Court felt that the Legislative Auditor's report regarding the total compensation paid for Mr. Cantrelle was not relevant to his calculation, the Court did take a look at and rely on the proffer when trying to make a determination regarding retirement and/or deferred compensation plan."

---

[37] That amendment to the ordinance is not a part of this record, nor is it at issue in this appeal.

The purpose of a proffer is to preserve excluded testimony or evidence for appellate review. See La. C.C.P. art. 1636; see also **Magee v. Pittman**, 98-1164 (La. App. 1st Cir. 5/12/00), 761 So. 2d 731, 742, writs denied, 2000-1684, 2000-1694 (La. 9/22/00), 768 So. 2d 31, 602. It is well-settled that a trial court is afforded vast discretion with regard to evidentiary rulings, and the court's decision to admit or deny evidence will not be disturbed on appeal absent a clear abuse of that discretion. **Danna v. Ritz-Carlton Hotel Co., L.L.C.**, 2020-0116, 2020-0187, 2020-0318 (La. App. 4th Cir. 3/24/21), ___So.3d ___, ___, 2021 WL 1159726, at *7, writs denied, 2021-00713, 2021-00714 (La. 10/1/21), 324 So.3d 1053 and 1059; see also **Pittman v. Flanagan**, 2019-0038 (La. App. 1st Cir. 9/27/19), 287 So.3d 721, 728. Based on our review of the record and the proffered exhibit, we cannot find that the district court abused its vast discretion in excluding the proffered exhibit as alleged by Mr. Chaisson. These assignments of error are without merit.

**Chaisson's Assignment of Error 4: Prescription**

In his fourth assignment of error, Mr. Chaisson contends that Mr. Cantrelle's claims to compensation arising three years prior to October 9, 2019 are prescribed because Mr. Cantrelle did not name the Parish as a defendant until he filed his second supplemental and amended petition on that date.

Mr. Cantrelle argues in response that he filed a supplemental and amended petition for declaratory judgment and mandatory injunction in his official capacity as the Parish President on April 10, 2019. Therein, Mr. Cantrelle's request for mandatory injunction specifically demanded that "Lafourche Parish" pay him what he was owed. Because Mr. Cantrelle filed the supplemental and amended petition in his official capacity, he argued that the Parish had sufficient notice of the suit, including his demand against the Parish. Mr. Cantrelle also argued that any amendments made in his October 9, 2019 second supplemental and amended

petition relate back to the filing of his supplemental and amended petition on April 10, 2019.

Louisiana Civil Code article 3494(1) sets forth that "[a]n action for the recovery of compensation for services rendered" is "subject to a liberative prescription of three years[.]" An objection of prescription is a peremptory exception, which a defendant may raise at any time. La. C.C.P. arts. 927(A)(1) and 928(B). A party urging an exception raising the objection of prescription has the burden of proving facts to support the exception unless the petition is prescribed on its face. **Dunn v. City of Baton Rouge**, 2007-1169 (La. App. 1ˢᵗ Cir. 2/8/08), 984 So.2d 129, 130. Louisiana Code of Civil Procedure article 931 provides that at the trial of a peremptory exception of prescription, "evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition." In the absence of evidence, an exception of prescription must be decided on the facts alleged in the petition, which are accepted as true. **Bailey v. Loewe**, 2019-0915 (La. App. 1ˢᵗ Cir. 8/3/20), 310 So.3d 746, 748. If evidence is introduced at the hearing on the peremptory exception of prescription, the district court's findings of fact are reviewed under the manifest error standard of review. **Sanders v. Petrin, L.L.C.**, 2019-1625 (La. App. 1ˢᵗ Cir. 7/24/20), 309 So.3d 388, 390. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. **Oil Ins. Ltd. v. Dow Chem. Co.**, 2007-0418 (La. App. 1ˢᵗ Cir. 11/2/07), 977 So.2d 18, 23, writ denied, 2007-2319 (La. 2/22/08), 976 So.2d 1284.

Louisiana Code of Civil Procedure article 1153 provides that "[w]hen the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original

25

pleading." The criteria for determining whether La. C.C.P. art. 1153 allows an amendment, which changes the identity of a party sued, to relate back to the filing date of the original petition (in our case, the supplemental and amended petition filed on April 10, 2019, wherein Mr. Cantrelle first requested the mandatory injunction) are:

> (1) The amended claim must arise out of the same transaction or occurrence set forth in the original petition;
>
> (2) The purported substitute defendant must have received notice of the institution of the action such that he will not be prejudiced in maintaining a defense on the merits;
>
> (3) The purported substitute defendant must know or should have known that but for a mistake concerning the identity of the proper party defendant, the action would have been brought against him;
>
> (4) The purported substitute defendant must not be a wholly new or unrelated defendant, since this would be tantamount to assertion of a new cause of action which would have otherwise prescribed.

**Renfroe v. State ex rel. Dep't of Transp. & Dev.**, 2001-1646 (La. 2/26/02), 809 So.2d 947, 950-51.

At the outset of the evidentiary hearing on the mandatory injunction, the district court heard the peremptory exception raising the objection of prescription filed by Mr. Chaisson. The district court discussed its prior ruling on an objection of prescription raised in this matter. The district court stated that "Mr. Cantrelle got it right from day one. He filed in his official capacity as the [P]resident of the [P]arish of Lafourche." The district court further stated that "Lafourche Parish has been joined since the initial filing...as far as the declaratory judgment is concerned...." The district court then found that in "April when he files his first amended petition, he clearly asks for a mandatory injunction.... And he refers to the [P]arish in it. So whether or not he names them as a defendant at that time, I think is irrelevant." The district court then sustained Mr. Chaisson's exception

26

"that the three year back pay calculation would run from the filing of the first amended petition where [Mr. Cantrelle] formally asked for the [mandatory] injunction.... So we should be going three years back from the April [10,] 2019 filing date."

No evidence was introduced at the hearing on the objection of prescription; thus, the objection must be decided on the facts alleged in the petition, which are accepted as true. See La. C.C.P. art. 931; see also **Bailey**, 310 So.3d at 748. Mr. Cantrelle filed a supplemental and amended petition for declaratory judgment and mandatory injunction in his official capacity as the Parish President on April 10, 2019. Therein, Mr. Cantrelle named the Council as the sole defendant. In Mr. Cantrelle's request for mandatory injunction, he specifically demanded that "Lafourche Parish" pay him what he was owed. Mr. Cantrelle requested service on the Clerk of the Lafourche Parish Council and the District Attorney, who is counsel for the Parish.

Mr. Cantrelle's amended claim against the Parish for mandatory injunction and back pay raised in his October 9, 2019 second supplemental and amended petition arises out of the same transaction/occurrence set forth in his April 10, 2019 supplemental and amended petition. See **Renfroe**, 809 So.2d at 950. When Mr. Cantrelle requested service of process of his April 10, 2019 supplemental and amended petition on the District Attorney, the attorney for the Parish, the Parish received notice such that it would not be prejudiced in maintaining a defense in this matter. **Id.** at 951. Furthermore, the Parish knew that but for a mistake concerning the identity of the proper party defendant, the action would have been brought against the Parish. **Id.** In fact, the District Attorney responded to Mr. Cantrelle's supplemental and amended petition by intervening and filing various exceptions on April 16, 2019, which indicates that the Parish was "on notice" regarding Mr. Cantrelle's claims for back pay raised in his April 10, 2019

27

supplemental and amended petition. Finally, the Parish was not a wholly new or unrelated defendant to this suit. **Id.** Thus, under the criteria for relation back under La. C.C.P. art. 1153, the claims made by Mr. Cantrelle in his October 9, 2019 second supplemental and amended petition for declaratory judgment and mandatory injunction against the Parish relate back to the April 10, 2019 filing date of his supplemental and amended petition.

Accordingly, we find no error in the district court's ruling on the objection of prescription. Any claims made against the Parish by Mr. Cantrelle for back pay arising more than three years prior to April 10, 2019 are prescribed.

## DECREE

We affirm the district court's March 30, 2021 judgment. Costs of this appeal, in the amount of $2,271.36 are assessed against defendant/appellant, Parish of Lafourche. Costs of this appeal, in the amount of $2,243.36 are assessed against nominal plaintiff/appellant, Archie Chaisson, III, in his official capacity as the President of the Parish of Lafourche.

**AFFIRMED.**

Lafourche Parish Clerk of Court   C-137931
    Filed Mar 30, 2021 4:22 PM         D
              Rita Bernard
       Deputy Clerk of Court

| | | |
|---|---|---|
| JAMES B. CANTRELLE, IN HIS OFFICIAL CAPACITY AS THE PARISH PRESIDENT OF THE PARISH OF LAFOURCHE | * | 17TH JUDICIAL DISTRICT |
| | * | PARISH OF LAFOURCHE |
| VS. NO. 137931 | * | STATE OF LOUISIANA |
| THE LAFOURCHE PARISH COUNCIL | * | |

## JUDGMENT

This matter came before the court for a hearing on the 15th day of March, 2021.

Present were:

Stephen J. Haedicke, on behalf of the Petitioner, James B. Cantrelle;

Michael G. Gee, on behalf of Archie Chiasson, III; and

Joseph S. Soignet and Lisa Orgeron, Assistant District Attorneys on behalf of the Parish of Lafourche.

Pursuant to the pleadings, evidence and arguments presented, and for oral reasons provided in open court, and as shown by the calculations in Exhibit A, attached, the court renders the following judgment:

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that judgment is rendered in favor of James B. Cantrelle and against the Lafourche Parish Consolidated Government for unpaid salary for the following years in the following respective amounts:

| | |
|---|---|
| 2016 (prorated from April 10, 2016) | $46,272.00 |
| 2017 | $49,555.00 |
| 2018 | $54,749.00 |
| 2019 | $30,662.00 |

Court costs are assessed against the Lafourche Parish Consolidated Government. Legal interest is also assessed against the Lafourche Parish Consolidated Government as follows:

On amount owed for years 2016 through 2018 ($150,576.00), commencing on April 10, 2019.

Page 1 of 2

453

On amount owed for year 2019 ($30,662.00), commencing on January 1, 2020.

**JUDGMENT RENDERED AND SIGNED** within Chambers in Thibodaux, Louisiana, this 30th day of March, 2021.

_____
CHRISTOPHER J. BOUDREAUX, JUDGE
17TH JUDICIAL DISTRICT COURT
DIVISION "D"

Clerk, please mail Notice of Judgment
to all parties.

454

Lafourche Parish Clerk of Court  C-137931
Filed Mar 30, 2021 4:22 PM        D
Rita Bernard
Deputy Clerk of Court

JAMES B. CANTRELLE, IN HIS          *        17TH JUDICIAL DISTRICT
OFFICIAL CAPACITY AS THE
PARISH PRESIDENT OF THE
PARISH OF LAFOURCHE                 *        PARISH OF LAFOURCHE

VS. NO. 137931
                                    *        STATE OF LOUISIANA
THE LAFOURCHE PARISH COUNCIL

## EXHIBIT A

|  | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|
| Assessor | $185,458.00 | $192,876.00 | $171,446.00 | $171,445.00 | N/A |
| Clerk | $182,046.00 | $189,589.00 | $166,694.00 | $206,863.00 | N/A |
| Sheriff | $190,720.00 | $193,707.00 | $199,235.00 | $195,287.00 | N/A |
| Average Salary of Assessor, Clerk and Sheriff | N/A | $186,075.00 | $192,057.00 | $179,125.00 | $191,198.00 |
| Amount Parish President Was Paid | N/A | $122,341.00 | $142,502.00 | $124,376.00 | $160,536.00 |
| Amount Parish President Is Owed |  | $46,272.00* | $49,555.00 | $54,749.00 | $30,662.00 |

*$46,272.00 is the prorated amount that is owed to the Parish President for 2016. The formula is: (days subject to payment)/(total days in a year)x(average salary of assessor, clerk and sheriff for 2015). 265/365 = .726 x $63,734.00 = $46,272.00

455

According to the record on appeal (specifically Ex. Cantrelle 3 and Vol. 3, pp. 612-613), the district court included the following amounts in its calculations.

| | | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|---|
| **Assessor** | Salary | 152,640 | 158,746 | 158,746 | 158,745 | |
| | Benefits-retirement | 32,818 | 34,130 | 12,700 | 12,700 | |
| | TOTAL | 185,458 | 192,876 | 171,446 | 171,445 | |
| | | | | | | |
| **Clerk** | Salary | 115,685 | 120,312 | 94,231 | 122,671 | |
| | Salary-supplemental | 21,600 | 21,900 | 22,800 | 23,400 | |
| | Salary-statutory allowance | 13,728 | 14,221 | 12,080 | 14,607 | |
| | Salary-election expense | 2,400 | 2,500 | 2,400 | 2,400 | |
| | Benefits-retirement | 28,633 | 30,656 | 35,183 | 43,785 | |
| | TOTAL | 182,046 | 189,589 | 166,694 | 206,863 | |
| **Sheriff** | Salary | 153,960 | 154,088 | 160,338 | 160,338 | |
| | Benefits-retirement | 36,760 | 39,619 | 38,897 | 34,949 | |
| | TOTAL | 190,720 | 193,707 | 199,235 | 195,287 | |
| | | | | | | |
| **AVERAGE** | | | 186,075 | 192,057 | 179,125 | 191,198 |
| | | | | | | |
| **Salary Actually Paid to Parish President** | | | 122,341 | 142,502 | 124,376 | 160,536 |
| | | | | | | |
| **Amount owed to Parish President** | | | 63,737<br>46,272* | 49,555 | 54,749 | 30,662 |

*prorated amount for 2016 based on exception of prescription:
(days subject to payment) / (total days in a year) x (owed average salary for 2015)
265/365 = 0.726 x 63,734 = 46,272

# STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

### NO. 2021 CA 0678

### JAMES B. CANTRELLE, IN HIS OFFICIAL CAPACITY AS THE PRESIDENT OF THE PARISH OF LAFOURCHE

### VERSUS

### THE LAFOURCHE PARISH COUNCIL

**THERIOT, J., assigning additional reasons.**

I write separately to emphasize that the use of the word "compensation" in Lafourche Parish Ordinance 5444 governing the Parish President's salary creates ambiguity in the application of the ordinance. Compensation is defined as the "remuneration **and other benefits** received in return for services rendered." (Emphasis added.) *Blacks Law Dictionary*, 301 (8th ed. 2004).

The ordinance provides that the Parish President's "compensation" will be "based on the prior year average compensation" of the sheriff, clerk of court, and assessor, each of which are "established on an annual basis in accordance with a predetermined formula approved by the State Legislature." However, the formulas set forth by the legislature for these three positions contain a number of components that together make up the total compensation for the respective positions. See, La. R.S. 13:782, 13:5521, and 47:1907. For example, under La. R.S. 13:5521.1, a sheriff who completes the training, certification, or education requirement or attains the requisite law enforcement experience shall be granted a seven percent increase in compensation to his annual salary. Louisiana Revised Statutes 13:782(A)(2) provides that a clerk of court is eligible to receive a salary

increase if the clerk completes the annual certification updates and renewal courses. Under La. R.S. 47:1907(J), an assessor, in addition to all other forms of compensation allowed by law, may increase his annual compensation by an amount not to exceed seven thousand dollars. All of the various components added to the base salary of the sheriff, clerk of court, and assessor do fall within the definition of compensation.

Considering the ordinance uses the term "compensation" rather than "salary" and is based on the convoluted predetermined formulas enumerated by the legislature, I cannot find that the trial court erred in its application of the ordinance in this matter.

# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# 2021 CA 0678

## JAMES B. CANTRELLE, IN HIS OFFICIAL CAPACITY AS THE PRESIDENT OF THE PARISH OF LAFOURCHE

## VERSUS

## THE LAFOURCHE PARISH COUNCIL

*PMc by JEW*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**McClendon, J., dissents in part.**

I disagree with the majority's conclusion that the retirement benefits of the Sheriff, Clerk of Court, and Assessor were properly included in the calculations upon which the Lafourche Parish President's salary was based. At all times relevant hereto, Lafourche Parish Ordinance 5444 specified that "the compensation rates for the Parish-wide positions of the Sheriff, Clerk of Court and Assessor are established on an annual basis in accordance with a predetermined formula approved by the State Legislature." The ordinance further provided that the "Compensation" of the Parish President was to "be established based on the prior year average compensation" of the Sheriff, Clerk of Court, and Assessor. However, nothing in the predetermined statutory formulas for the three parish-wide positions contains any reference to retirement benefits. See LSA-R.S. 13:782, 13:5521, and 47:1907. Therefore, based on the plain language of the statutory formulas, retirement benefits should not have been included in the calculations to determine the salary of the Lafourche Parish President.[1] Accordingly, I respectfully dissent.

---

[1] I note that in the March 23, 2020 judgment, the trial court declared the meaning of Lafourche Parish Ordinance 5444 and determined that the compensation owed to the Lafourche Parish President pursuant to said ordinance "shall include, in the calculation, all supplemental pay, compensation or benefits received by the Sheriff, Clerk of Court, and Assessor, for whatever reason." This declaratory judgment may have had finality as a final judgment under LSA-C.C.P. art. 1871, but the judgment was not appealed. The parties have not raised this issue, and therefore, I decline to address same.